Wm. V. Seighman *vs.* Wm. M. Marshall, Adm'r of Jacob S. Marshall.

In an action against an administrator, the defendant *pleaded* that the deceased was indebted to an amount greatly exceeding the assets of the estate which have come to his hands, and that said assets are wholly *insufficient* to pay the plaintiff's claim, regard being had to the debts still due and owing by the deceased.  The plaintiff *replied,* that the deceased was not indebted to an amount greatly exceeding the assets which have come, and *ought to have come,* to the hands of the defendant, as administrator, and that said assets *are sufficient* to pay the plaintiff's claim, regard being had to the legal and proper debts still due and owing by the deceased.  On this *replication* issue was joined.  Held:

1st. That under these pleadings the *onus* of proof of assets is on the plaintiff: this case is not distinguishable from the case where *plene administravit,* or no assets, is pleaded.

2nd. As the replication charges the defendant with assets received, and which *ought to have come* to his hands, it is sufficient to enable the plaintiff to offer proof of a *devastavit.*

The subscription list and good will of a printing office, are not assets, under our Act of Assembly; they are of inappreciable value, and of a too uncertain and contingent nature to be the subject of appraisement and estimation.

Accounts of an executor or administrator, passed in the orphans court, are *prima facie* evidence of all suits touching matters contained in them.

Such accounts being merely *prima facie* evidence, it is competent for the opposing party to surcharge and falsify whatever may be erroneous in them, and ask instructions of the court to the jury in relation thereto.

An administration account, passed by the orphans court, reciting that certain property had been stricken out of the inventory, as belonging to the defendant, the administrator, is admissible in evidence, with the qualification that such recital does not, of itself, prove title to the property so struck out, in the defendant as against the plaintiff.

The registry of claims against an estate passed by the orphans court, made under the Act of 1854, ch. 86, is an official record, admissible as *prima facie* evidence to show the amount of debts, leaving to the opposite party the right to offer evidence to prove their invalidity.

In an action against an administrator, he may offer in evidence bills of sale or mortgages showing a lien on the property of his intestate, and payment by him of money due to a party by the intestate, under the contract with the plaintiff, upon which the suit was brought.

In a suit against an administrator by a creditor of the decedent, it is competent to charge the defendant with negligence or mal-administration of the estate, if it can be established by proof.

In an action against an administrator by a creditor, the defendant is chargeable, as assets, with any sperate debts due the deceased, which may have been lost by the negligence of the defendant, in failing to collect them.

In a suit against an administrator by a creditor, property of the intestate remaining in the hands of the defendant, *in specie,* is assets, and is to be estimated in ascertaining the amount the plaintiff is entitled to recover, unless the defendant can show that it remains unsold, without his fault or negligence.

Appeal from the Circuit Court for Washington county.

By an agreement between Seighman and Jacob S. Marshall, dated the 9th of October 1856, among other things, Seighman agreed to sell to Marshall all his interest in a newspaper and printing office called the "American Chronicle," consisting of the types, presses, chases, and all his interest in the *subscription lists and good will,* and all the furniture in said office, for $1325.50, which sum Marshall stipulated to pay in part in certain instalments, in money, &c., of which $300, with interest from the date of the agreement, was to be paid on the 1st of April 1858, and the balance by assuming payment of a bill of sale executed by J. D. Brumbaugh and Seighman to John W. Boyd, for $400, to be paid by said Marshall to Boyd, as stipulated in said bill of sale.

Jacob S. Marshall died about the 1st of December 1857, and letters of administration upon his estate were granted to the appellee on the 15th of December 1857, and on the 1st of November 1858, Seighman brought suit against said administrator upon the above agreement, to recover the $300, with interest, due on the 1st of April 1858.

The defendant, in his plea, confessed the agreement sued on, and that the plaintiff is entitled to his action thereon, but says "that the said Jacob S. Marshall, deceased, was, in his lifetime, largely indebted to sundry persons, in amounts greatly exceeding the assets of the estate of said deceased, which have come to the hands of the defendant, and that said assets are wholly insufficient to pay the said plaintiff's claim, regard being had to the debts still due and owing by the said Jacob S. Marshall, deceased. To this plea the plaintiff replied,

"that the said Jacob S. Marshall was not, in his lifetime, largely indebted to sundry persons, in amounts greatly exceeding the assets of the estate of the said deceased, which have come, *and ought to have come,* to the hands of the said defendant, as administrator; and the said plaintiff says that said assets are sufficient to pay the claim of the said plaintiff, regard being had to the legal and proper debts still due and owing by the said Jacob S. Marshall, deceased." On this replication issue was joined by the defendant, and the case was tried on the 24th of March 1859.

*1st Exception.* The plaintiff, after reading in evidence the agreement declared on, proposed to rest his case, insisting that the *onus* of showing the amount of debts and the insufficiency of assets, as alleged in the plea, was upon the defendant, and not upon the plaintiff. The defendant insisted that this *onus* was upon the plaintiff, and not upon himself, and the court (PERRY, J.) was of opinion, and so determined, that the *onus* was upon the plaintiff, and to this opinion and ruling the plaintiff excepted.

*2nd Exception.* The plaintiff then proved that the defendant's intestate died about the 1st of December 1857, exclusively possessed as proprietor and editor of the printing establishment in question, and continued to edit and publish the newspaper up to the time of his death, and that said establishment, with every thing relating and pertaining thereto, went into the hands of the defendant, as administrator, upon his obtaining letters, about the 15th of December 1857, and that the defendant carried on the publication of said newspaper for a considerable time after obtaining such letters. The plaintiff then, for the purpose of showing the amount of assets that ought to have come to or be in the hands of the defendant, as such administrator, offered to prove that the said printing establishment had, at the time the defendant took possession thereof, a considerable subscription list, and also a good will, which much enhanced its value, and that the usual and advantageous manner of selling such an estabment, is to sell not only the press and materials of the office, but the subscription list and good will pertaining thereto, and

that a great deal of the value of a newspaper printing office consists in the subscription list and good will belonging to the same, and also offered to prove the value of said printing establishment, including the subscription list and good will, at the time and for several months after the grant of letters to the defendant. But the defendant objected to the evidence thus offered, and insisted that no evidence could be given of the value of either the subscription list or the good will belonging or pertaining to the said printing establishment, and that he, as administrator, was only accountable for the materials of said office, regardless of either the subscription list or the good will connected therewith, and giving it value. The court sustained this objection, and ruled that said offered evidence was inadmissible, and that the defendant was only accountable for the actual value of the materials of the said printing office or establishment, which came to his hands as administrator, and not for any value that might be attached and shown to belong to the subscription list, or to the good will, as connected with and pertaining to the said printing office or establishment. To this opinion and ruling the plaintiff excepted.

*3rd Exception.* The plaintiff then gave in evidence the list of debts due the estate, as sworn to and returned to the orphans court by the defendant, amounting to $2800, and also an inventory of the personal property belonging to the estate, embracing all the material, machinery and furniture of the printing office, as sworn to and returned by the defendant, and then rested his case. The defendant then read in evidence an order of sale, passed by the orphans court, on the 22nd of October 1858, directing him to sell all the personal property returned in the inventory. He then offered to read in evidence a certified copy of the record and proceedings of the orphans court, being an account settled in that court on the 18th of March 1859, and connected therewith, and as part of such proceedings a petition of the defendant, filed in that court on the 15th of March 1859, stating that the printing establishment appraised in the inventory was subject to a bill of sale of one-third thereof, by John W. Boyd to the de-

Seighman *vs.* Marshall's Adm'r.

fendant, dated the 16th of February 1858, and to a mortgage for $800, executed by the intestate to the defendant, on the 16th of January 1856, and praying that the defendant may be allowed to amend the appraisement in the inventory, so as to state that the same is subject to these incumbrances held by the defendant, and the order of the court of the 16th of March 1859, allowing the inventory to stand amended, as prayed by said petition. The account passed upon such order of the court and changed inventory, shows a balance due the estate of $635, of which $426 consists, as stated by the defendant in the account, of property returned in the inventory, which remains unsold and unavailable in the hands of the administrator. To the admissibility of these proceedings the plaintiff objected, and insisted that the same were not, under the circumstances of this case, admissible in evidence, and that the plaintiff ought not to be affected by recitals and statements made therein by the defendant, or by the order of said orphans court. But the court overruled the objection, being of opinion that said record, account, and all its statements and recitals are *prima facie* evidence against the plaintiff in this cause, with the qualification that the said recitals do not, of themselves, prove title to the property stricken out of the inventory, in the defendant as against the plaintiff, and said account, with its statements, was accordingly read to the jury. To this opinion and ruling of the court the plaintiff excepted.

*4th Exception.* The defendant then offered to read in evidence a recorded list of claims against the deceased, that had been proven and passed by the orphans court, and recorded by the register of wills, for the purpose of showing the amount of debts due from the estate. To the reading of this list or schedule the plaintiff objected, but the court overruled the objection, and permitted the same to be read in evidence. To this opinion and ruling of the court, the plaintiff excepted.

*5th Exception.* The defendant then offered to read in evidence a bill of sale from John W. Boyd, dated the 6th of February 1858, purporting to convey to the defendant, in

consideration of $125 paid by the defendant to said Boyd, and of certain moneys advanced to Jacob S. Marshall, at the request of said Boyd, one third of the printing establishment known as the "American Chronicle," with all the interest therein, conveyed to said Boyd by Brumbaugh and Seighman, by bill of sale dated the 18th of April 1856. To the admissibility of this bill of sale the plaintiff objected, but the court overruled the objection, and permitted the same to be read in evidence, and to this opinion and ruling of the court, the plaintiff excepted.

*6th Exception.* The defendant then offered to read in evidence the bill of sale from Brumbaugh and the plaintiff to said Boyd, dated the 18th of April 1856, being the same referred to and assumed by the said Jacob S. Marshall, in and by the agreement declared on in this case. The plaintiff objected to the admissibility of this bill of sale, but the court overruled the objection, and permitted the same to be read in evidence, and to this ruling and opinion the plaintiff excepted.

*7th Exception.* The defendant having concluded the evidence on his part, the plaintiff then offered to prove that the defendant, as administrator, did not apply to the orphans court for an order to sell the personal property of the deceased, until the 22nd of October 1858, though letters were granted to him on the 15th of December 1857, and that he had made no proper effort to sell said printing establishment, and that he kept the personal property of the deceased on hand, and permitted the same to become greatly depreciated in value, and had used for his own purposes the said printing establishment, and had permitted others to use it, and take away the material therefrom, and that at this time said materials remain in a state of great confusion, and in a condition of insecurity, and that by reason of the manner in which said printing materials have been used and taken care of, they have become greatly depreciated in value. The defendant objected to all such evidence so offered, and the court sustained the objection and excluded the same. To this ruling and opinion the plaintiff excepted.

*8th Exception.* Upon the whole evidence in the case, the plaintiff asked the court to instruct the jury:

1st. That if they find there were debts due the deceased at the time of his death, and were collectable within a reasonable time after the grant of letters 'to the defendant, and that such debts were not collected within such reasonable time, then the defendant is responsible for the amount of such debts to the creditors of the deceased, if there be any.

2nd. That the defendant, as administrator, was bound to use due diligence, and not to suffer the property of the estate to be depreciated or injured by his neglect, and that if there have been any acts of negligence or careless administration on his part, such as are injurious to the rights of creditors, such acts would amount to a *devastavit,* and that the defendant would be responsible to creditors, if there be any, to the extent of the loss sustained by them by reason of such *devastavit.*

3rd. That if the jury find that letters were granted to the defendant on the 15th of December 1857, and that he did not apply for or obtain an order from the orphans court to sell the personal property of the deceased until the 22nd of October 1858, and that by reason of such delay, the plaintiff, as creditor of the deceased, was injured to any extent, then the defendant is responsible to the extent of such injury.

The court refused to grant these prayers, or either of them, and to this refusal the plaintiff excepted.

*9th Exception.* The defendant then, upon all the evidence, asked the court to instruct the jury, that any property of the intestate which remains in the hands of the defendant, *in specie,* is not assets for the purpose of this action, and only so much thereof as has been converted into money, is to be considered as assets in this cause, and that the plaintiff is only entitled to recover in proportion to the amount of money proved to be in the hands of the defendant, regard being had to the debts due and owing from the deceased. This instruction the court granted, and to this ruling the plaintiff excepted.

*Defendant's Exception.* The defendant offered to prove

that he advertised the property of his intestate, as contained in the inventory, for sale, in a newspaper called the "Hagers-town Mail," from the 8th of October 1858, to the 19th of November 1858, on which day it was offered for sale, and could not be sold, and also that he had used other assiduous efforts to dispose of the same, but was wholly unable so to do. He further offered to prove that a large portion of the debts returned due the estate of his intestate were wholly worthless, and could not be collected. But the court was of opinion that the whole of said testimony was illegal and improper, and refused to allow the same to go to the jury. To this opinion and ruling of the court, the defendant excepted.

Under these rulings, the jury rendered a verdict for the plaintiff for $27.54, being the proportion of assets applicable to his claim. From the judgment thereon the plaintiff appealed.

The cause was argued before LE GRAND, C. J., BARTOL and GOLDSBOROUGH, J.

*R. H. Alvey*, for the appellant:

1st. In deciding the question raised by the first exception, the court below, probably, proceeded upon the idea of similarity to the question of *onus* raised on the pleas of no assets, and *plene administravit*. 2 *H. & J.*, 38, *Morgan vs. Slade.* Ibid., 281, *Wilson vs. Slade.* 7 *Md. Rep.*, 196, *Burgess vs. Lloyd.* But the similitude is not exact, nor does the same rule apply to the form of allegation adopted here. The defendant admits, on record, the right of action, and only alleges the *deficiency* of assets to pay the claim. This allegation casts upon the defendant the *onus* of proving it. "The proof of an allegation of *deficiency* (says 1 *Stark. Ev.*, 277,) *lies on the party who alleges it*, although it imply a negative; for this is not to prove a mere negative, but to prove an actual relation in point of magnitude or value. Thus, upon an issue whether land assigned for payment of a legacy was deficient in value, it was held that the party who alleged that

it was deficient, was forced to prove it." 12 *Mod.*, 526, *Berty vs. Dormer.* Upon the principle thus stated, I contend that the court below decided wrong, and should therefore be reversed on the first exception.

2nd. I insist that the ruling in the second exception was wrong, and that the evidence offered should have been permitted to go to the jury. That the printing establishment as it existed, with everything properly belonging to it, and which went to make up its value and completeness, should have been sold by the administrator, and that the proceeds of such sale would be assets in his hands. That the subscription list and good will of the office, were as much parts of the establishment as the printing material, and if they enhanced the value of the office, even but as incidents to it, the administrator was bound to sell the entire concern to the best possible advantage; and that he would have acted in gross violation of his duty, to have broken up the establishment, and sold the mere material, when, by selling the establishment with its incidents and appurtenances, he could or might have realized a larger sum. If the subscription list and good will added value to the material, and were by any means saleable in connection therewith, or as part of the establishment, then they are species of personal property, and, as such, would be assets in the hands of an administrator; for the *Act of* 1798, *ch.* 101, *sub-ch.* 7, declares that *every species of personal property* shall be assets in his hands. But whether personal property *per se*, or not, if they give additional value to that which is personal property, the estate is entitled to the enhanced value thus given. *Peake's N. P. Cas.*, 74, *Worral vs. Hand.* 2 *Wms. Excrs.*, 1410. 4 *G. & J.*, 277, *Edelen vs. State.*

3rd. That the court was wrong, under the circumstances of the case, in letting all the proceedings set out in the third exception be read to the jury, I think is manifest. That these proceedings had been taken in the orphans court but some five or six days previous to the trial of this case in the court below, and with a special view to such approaching trial, and the contemplated defence, and that such proceed-

ings were entirely *ex parte*, are facts, of themselves, sufficient to preclude the whole proceeding from the jury. It was manufactured evidence for the trial, and should not have been received. But, after what had transpired in the orphans court, the returning of the inventory, sworn to by the defendant, so long after the date of the pretended title, and the application for and obtention of the order of the orphans court directing a sale of the entire property returned in the inventory, *as the property belonging to the estate of the defendant's intestate,* precluded and estopped him from taking and relying on such a proceeding as he procured in the orphans court, and which he offered in evidence, as stated in this exception. That the proceedings in the orphans court were illegal, in the manner and form adopted. The orphans court had no jurisdiction to determine a question of property on an *ex parte* application, without giving those interested an opportunity to answer the application and controvert the right, and, if desired, have a plenary proceeding to try the question. The amount of the appraised value of the printing establishment was $1280, and upon the mere representation of the defendant that he held a mortgage of $800, that amount was substracted from the appraised value, and struck out of the inventory. It is hard to imagine upon what interest that mortgage could operate, as it was executed, according to the statement in the petition to the orphans court, on the 16th of January 1856, and the sale by the plaintiff to the defendant's intestate, was not made until the 9th of October 1856, and the bill of sale from Boyd to the defendant, for one-third of the establishment, referred to in the said petition, was not made until the 16th of February 1858. It does not, therefore, appear what interest Jacob S. Marshall had at the time of making the mortgage. But two-thirds of the entire value of the establishment, according to the appraisement, have been turned over to the defendant, on account of this mortgage. This was certainly illegal. The defendant, if he held a proper mortgage upon any part of the establishment, should have returned the property, subject to the mortgage and the mortgage debt, as a preferred claim, and not taken the pro-

perty out of the administration. The same rule would apply here as in cases of insolvency. 6 *G. & J.*, 230, *State vs. Bank of Maryland.* The proceedings of the orphans court are but *prima facie* correct, at best, (2 *G. & J.*, 90, 99, *Allender vs. Riston,*) and when they are presented pregnant with evidence of illegality and irregularity, that *prima facie* presumption of correctness is overcome, and they are left without any presumptions to support them. The legal objection was apparent to the court, whose province it was to decide, in the first instance, whether there was, *prima facie*, any reason for sending these proceedings to the jury at all. 1 *Greenlf. Ev.*, sec. 49. At the foot of the account it is stated, that of the sum of $635.32, the balance shown to be due the estate, $426.92 consists of property returned in the inventory, and which is unavailable as assets in the hands of the administrator; and the court decided that such statement was *prima facie* true as against the plaintiff. This, I maintain, was not correct.

4th. There is no principle, that I am aware of, to justify the admission of the list of debts as evidence for the purpose stated in the fourth exception. The Act of 1854, ch. 86, under which the registry was made, *only* designed such registry to be notice to the executor or administrator, for it is expressly provided, that it "shall not afford any evidence as to the justice or correctness of any debt therein entered," when the same should be controverted. The defendant should have produced the several claims, and proven them to have been, at the time, legal and subsisting debts, due from the estate. 3 *Eng. C. L. Rep.*, 460, *Gillies vs. Smither.* 2 *Wms. Excrs.*, 1685.

5th. In the absence of any stated purpose, and with no proffer to follow up the bill of sale set out in the fifth exception with other evidence to show its pertinency to the case, and that it came within the issue formed, I contend it should have been rejected. But it should also have been rejected upon another ground. This bill of sale is dated on the 6th of February 1858, and some time after letters were granted to the defendant. Assuming it to be for the interest vested in

Boyd by the bill of sale from Seighman and Brumbaugh, referred to in the agreement between the plaintiff and the defendant's intestate, (and doubtless it was,) the payment and redemption of which bill of sale being assumed by the defendant's intestate, it would be in violation of the fiduciary relations and duties of the defendant, to permit him to purchase in the property covered by such bill of sale, and to hold it for his own individual use and profit. *Act* 1798, *ch.* 101, *sub-ch.* 8, *sec.* 2.  3 *H. & J.*, 99, *Turner vs. Bouchell.*  He is not permitted to assume the covenant and occupy the shoes of his intestate for his own advantage, and to make profit for himself; and, having purchased in the property, it must be taken to have been done on account and for the benefit of the estate, and thereby performing the covenant of the intestate with the plaintiff. 2 *Wms. Excrs.*, 1408, 1409, 1410.  2 *Chan. Cas.*, 207, 208.  9 *Mod.*, 459, *Gibblett vs. Read.* 3 *Md. Rep.*, 409, *Spindler vs. Atkinson.* 1 *Story's Eq.*, *sec.* 322.

6th. There was no purpose avowed for reading the bill of sale set out in the sixth exception, nor was it offered in connection with other evidence; and, in the mere abstract form in which it was offered, its pertinency to the issue is non-apparent.  The same reasons exist for excluding this bill of sale, as that in the fifth exception, and I rely upon the same grounds of objection to both.

7th. The propriety of the ruling in the seventh exception, may be considered in connection with the plaintiff's second and third prayers, stated in the eighth exception, and which were refused. as they present the same or nearly the same questions.  That the facts offered in this seventh exception, and those stated in the second and third prayers of the plaintiff, presented clear cases of *devastavit*, I think is beyond a doubt; and upon what ground the court below excluded the evidence, and refused to grant these prayers, it is hard to conjecture.  That while the plaintiff was not proceeding on a formal suggestion of *devastavit* upon judgment recovered, and where the judgment, upon finding a *devastavit*, would be against the administrator personally, the issue joined in

71      v. 17

this case involved the fullest inquiry into the quantum of assets, as well such *as are*, as also such *as have been or ought to be* in the hands of the defendant. Upon the issue of *plene administravit*, the same inquiry is open, and if it appear that the executor or administrator has been guilty of a *devastavit*, which has caused a failure of assets, the jury must find that the defendant has assets to the amount. 2 *Wms. Excrs.*, 1677. 6 *Term Rep.*, 10, *Mara vs. Quin. Wentworth's Excrs.*, 312. And as to what will amount to a *devastavit*, the law is well settled that any acts of negligence, or careless administration, such as in any way defeat the rights of creditors, legatees, or distributees, will make the executor or administrator liable. He is bound to use due diligence, and not to suffer the estate to be injured or at all diminished by his neglect. 2 *Wms. Excrs.*, 1535 to 1539. 2 *Freem.*, 12, *Phillips vs. Phillips.* 11 *Wend.*, 361, *Schultz vs. Pulver.* 5 *Pick.*, 96, *Brazier vs. Clark.* As to the degree of care required, see case of *Crosse vs. Smith*, 7 *East.*, 258. That the neglect to sell, and the use and abuse of the printing office by the defendant, would render him liable as for a *devastavit*, I contend is clear upon all the authorities.

8th. The plaintiff's first prayer in the eighth exception, presents the simple question, whether or not the defendant was bound to collect, and be accountable for, such debts due the estate as were collectable within a reasonable time from the granting of letters of administration? That if there were debts due the estate, and collectable within a reasonable time from the grant of letters, and the defendant failed to make such collections, he is accountable for such debts as though he had collected them, I contend is clear upon reason and authority. 2 *Wms. Excrs.*, 1536, 1537, 1544. 11 *Wend.*, 361. And as to what was a reasonable time, that was, in such a case as this, a question of fact for the jury. 3 *Gill*, 188, 189, *Edwards vs. The Balt. Fire Ins. Co.* 10 *How.*, 474, *Louisville Manufacturing Co. vs. Welch.* 6 *Mees. & Wels.*, 492, *Vaughan vs. Watt.*

9th. The prayer in the ninth exception has no reference, as will be perceived, to mere *choses in action*, in regard to

which the defendant would not be liable until collected, or default committed, but has reference to personal chattels, and in such aspect cannot be sustained. No action could ever be sustained against an administrator, should he think proper to retain the property in his hands *in specie*, if the idea put forth in this instruction be correct. But the issue formed determines the character of the inquiry, and shows it to be as to the quantity and extent of the assets that have or should have come to the hands of the defendant, and not as to how much of said assets have been converted into money. The judgment is simply recovered with reference to the extent of assets, and can be made, by execution, out of the property of the intestate remaining in the hands of the administrator, unadministered. Such is the form in which the judgment should be rendered. *Act of* 1802, *ch.* 101, *sec.* 1. 2 *Har. Ent.*, 100.

*Wm. T. Hamilton*, for the appellee:

1st. The ruling of the court in the first exception is right. By the Act of 1802, ch. 101, sec. 1, the administrator is permitted to plead an insufficiency of assets. Upon issue joined, the plaintiff seeks to recover his whole claim, and alleged a sufficiency of assets. The affirmative of the issue is upon him, and he is obliged to sustain it with proof. 1 *Greenlf. Ev.*, *sec.* 74, 77. Upon the pleas of *plene administravit*, and no assets, the proof of assets is upon the plaintiff. 2 *Wms. Excrs.*, 1677. *Morgan vs. Slade*, 2 *H. & J.*, 38. *Wilson vs. Slade, Ibid.*, 281. In legal effect, these pleas are not dissimilar. The one denies all assets, and the *onus* is on the plaintiff to show assets sufficient to cover his claim, and have judgment accordingly; in the other, assets are admitted, but an insufficiency to meet the plaintiff's claim. The plaintiff demands the whole claim, and asks a verdict for the full amount of it, because some assets are admitted by the plea, although a sufficiency be denied. The question of a sufficiency or insufficiency of assets is the only one, and placed directly in issue by the pleadings, and necessarily the allegation of a sufficiency is the affirmative. For, otherwise, the

administrator would be required to prove all the property that came to his hands, and possibly his own *devastavit*, in order to show assets sufficient to cover plaintiff's claim, which, upon his refusal to do either, would put the plaintiff at once on his proof to show it.

2nd. The Act of 1798, ch. 101, sub ch. 7, defines what shall be assets; all goods, wares, merchandize, utensils, furniture, negroes, cattle, stock, provisions, tobacco, and every kind of produce, &c., shall be considered as assets in the hands of the administrator. Nothing here *embraces the good will of a business*, and was not so intended, because it is too uncertain, remote and contingent to be appreciable, and applies to the person rather than the estate of the deceased. In case of partnership, where one partner dies, no part of the good will of the business, although actually sold by the surviving partner, can be claimed as part of the estate of the deceased partner; in such cases the good will remains to the survivor. 3 *Kent*, 64. There is no case to be found in which the good will of an establishment can be returned *as assets*. See, on this point, *Wentworth's Excrs.*, 141, and 2 *Wms. Excrs.*, 1410, 1411. It is submitted, therefore, that the ruling of the court in the second exception is correct.

3rd. The ruling of the court in the third exception we hold to be correct. Accounts settled in the orphans court by administrators, &c., are *prima facie* evidence in all suits touching the matters in them. *Owens vs. Collinson*, 3 *G. & J.*, 25. *Stockett vs. Jones & Wife*, 10 *G. & J.*, 276. And to this there is no limitation as to time, whether the accounts were settled before or after the suit was instituted against the administrator. *Evans vs. Iglehart*, 6 *G. & J.*, 173, 200, 201. The orphans court has full jurisdiction. A suit at law against an administrator, does not impair this jurisdiction, nor prevent the settlement of accounts at the proper time; nor does it prohibit the court from acting upon them, and making proper allowances, &c., (see *Act of* 1798, *ch.* 101, *sub-ch.* 8, *sec.* 2,) proving them, and compelling a delinquent administrator to discharge his duties. From its decision an appeal lies by any one interested. Therefore accounts so passed and proven are

evidence at the trial of the cause in a court of law, and not dependent upon the institution of the suit, as they are in no wise affected by it. Beside, administration was granted on the 15th day of December 1857, and this suit was brought on the 1st day of November following. The administrator, by the Act of 1831, ch. 315, sec. 3, is required to settle an account within the period of twelve months, so that if the argument of the plaintiff is correct, the institution of a suit before the expiration of twelve months, would entirely nullify this provision of the law, and its legal effect.

4th. The Act of 1854, ch. 86, requires the register of wills to record all claims against a testator or intestate as they are regularly passed, such entry to be considered as notice to the executor or administrator of its existence. It is an official record, and is to show as well the condition of the estate, as to bring the existence of such claims to the knowledge of the administrator, and under the issue joined in this cause, the debts mentioned in the record would certainly be evidence. *Act of 1820, ch. 174.* The claims are all regularly passed, and therefore *prima facie* correct, and in the proper form for the administrator to pay them, and upon their payment, he would undoubtedly receive a credit for them. The administrator alone may refuse to distribute to claims thus passed and recorded, but he does so at his peril. *Spencer vs. Spencer, 4 Md. Ch. Dec.*, 456. *Miller, Adm'r of Pottinger, vs. Dorsey, et al.*, 9 *Md. Rep.*, 317. We insist, therefore, that the ruling in the fourth exception is correct.

5th. The plaintiff had given in evidence to the jury the agreement of sale between the plaintiff and the intestate, and also the inventory of appraisement of the printing establishment, amounting to $1280 77, to show assets to that amount in the hands of the defendant. The defendant contends that the rulings of the court in the fifth and sixth exceptions are right, because the property could only be assets to the amount unincumbered; that these bills of sale were proof of the incumbrance upon the same, and diminished the value of the office as assets to the extent of said incumbrance. Any property mortgaged or pledged shall be assets in the hands of

the administrator, for so much as it is worth beyond the amount for which it was so mortgaged or pledged. 2 *Wms. Excrs.*, 1411.

7th. The introduction of the evidence offered in the seventh exception, was intended to establish negligence and waste, and not admissible under the pleadings in the cause, which was simply an issue of a sufficiency or insufficiency of assets. The duties of administrators, &c., are well defined by Acts of Assembly. He must return an inventory of appraisement within three months from the date of his letters, and on failure, the remedy is by attachment, or his letters may be revoked, and suit brought upon his bond. *Act of* 1798, *ch.* 101, *sub-ch.* 6, *secs.* 6, 13. He must also return an account to the court in twelve months, or his letters may be revoked. *Act of* 1831, *ch.* 315, *sec.* 3. And it shall be his duty, within thirteen months from the date of his letters, to discharge all just claims, or the proportion thereof, as he may have assets, and shall, every six months thereafter, make distribution of the money since come into his hands, until full administration; and upon failure, his bond may be put in suit. *Act of* 1798, *ch.* 101, *sub-ch.* 8, *sec.* 14. No administrator can sell the property of his intestate without an order of the orphans court; if he does sell without such order, the sale is void, and his letters may be revoked, and the property sold recovered back, or the bonds of the administrator may be put in suit. *Act of* 1843, *ch.* 304. The intestate died on the 15th of December 1857, the inventory of appraisement of the said printing establishment was had on the 30th of the same month, and valued the property of the intestate at $1280.77. The return of the inventory to the court was made on the 29th of August 1858, and the order of sale was passed on the 22nd of October 1858. This suit was instituted on the 1st of November 1858. For not returning the inventory of appraisement at the proper or at any time, and procuring an order of sale, the plaintiff's remedy was under these Acts of Assembly, and not by a suit of this kind. The order of sale is an act of the orphans court, and upon the re-

turn of the inventory it is the duty of the court to act. The inventory of appraisement being returned, and no order of sale passed, authorizing the administrator to sell, there is no cause of action against the defendant in this suit, and ought not to be given in evidence to affect him adversely, or charge him with negligence. But all the evidence here offered was to show negligence and waste, neither of which was in issue. The plaintiff declared generally upon his claim, and that being denied, the issue was joined on the question of assets. Such proof could only be given in evidence under a proceeding against the defendant for a *devastavit.* In *Hagthorp vs. Hook*, 1 *G. & J.*, 274, it is decided that in this State such action could only be maintained upon the bond of the administrator.

8th. Debts are only to be considered assets when collected. 2 *Wms. Excrs.*, 1421. 2 *Eng. C. L. Rep.*, 282, *Giles & Headings, vs. Dyson & Greenwell. Act of* 1798, *ch.* 101, *sub-ch.* 10, *secs.* 1, 4, 9. *Wentworth's Excrs.*, 159, and *note.* The plaintiff must show them to be collected, and, to make his prayer at all effective, it must be upon a proper state of the proceedings where negligence is alleged and shown. The same objection applies to the second prayer, as it exclusively refers to the question of *devastavit*, which is not in the issue. The same objection applies to the third prayer that was interposed to the admission of the evidence to establish it. The defendant, in not applying for or obtaining an order of sale, is not a cause of action. The order of sale has nothing whatever to do with the plaintiff's rights in this suit, or in this court; the orphans court has full jurisdiction, and there the plaintiff has his remedy. The ruling upon the prayers in the eighth exception was, therefore, correct.

9th. The instruction in the ninth exception is maintained upon the ground that nothing was in issue but assets simply, and disconnected entirely from the conduct of the defendant in the discharge of his duty, and for which, in another form of action, if it be in proof, he might be held responsible.

BARTOL, J., delivered the opinion of this court.

The appellant brought this suit to recover a debt due to him from the appellee's *intestate*, upon a written contract; the appellee (who was defendant below) pleaded that his intestate, Jacob S. Marshall, in his lifetime, did agree as alleged in the declaration, and that the plaintiff is entitled to his action thereon; "but that the deceased was, in his lifetime, largely indebted to sundry persons, in amounts greatly exceeding the assets of the estate of said deceased, which have come to the hands of the defendant, and that said assets are wholly insufficient to pay the said plaintiff's claim, regard being had to the debts still due and owing by the said Jacob S. Marshall, deceased." The plaintiff replied, "that the said Jacob S. Marshall, deceased, was not, in his lifetime, largely indebted to sundry persons, in amounts greatly exceeding the assets of the estate of the deceased, which have come, and ought to have come, to the hands of the said defendant, as administrator; and the said plaintiff says that the said assets are sufficient to pay the claim of the said plaintiff, regard being had to the legal and proper debts still due and owing by the said Jacob S. Marshall, deceased." The defendant joined issue on this replication. In the course of the trial nine bills of exception were taken by the plaintiff. In passing our judgment upon the several questions presented by this appeal, it will not be necessary to recapitulate the facts and circumstances developed in the course of the trial. The points ruled by the circuit court are so fully and clearly stated by the counsel in their printed briefs, and the cause has been argued and the authorities cited with so much ability and care, that we are enabled to dispose of the questions involved with great brevity.

*First Exception.*—Under the pleadings, the *onus* of proof of assets was on the plaintiff; we cannot distinguish this from the case where *plene administravit* or no assets is pleaded; in such case the rule is well established, that the burden of proof is on the plaintiff to show assets in the hands of the defendant.

*Second Exception.*—We concur with the circuit court in the propriety of excluding the evidence offered. The subscription list and good will of a printing office are not assets, under our Act of Assembly; they are of inappreciable value, and of too uncertain and contingent a nature to be the subject of appraisement and estimation.

*Third Exception.*—Nothing is better settled in our State than that the accounts of an executor or administrator, passed in the orphans court, are *prima facie* evidence in all suits touching matters contained in them. In this case we think the evidence was properly allowed to go to the jury, with the qualifications stated by the circuit court. The objections urged by the appellant were proper grounds to be addressed to the jury in estimating the weight of the evidence, but did not justify its rejection. The accounts being merely *prima facie* evidence, it was competent for the appellant to surcharge and falsify whatever may be erroneous in them, and to ask the instruction of the court to the jury in relation thereto. The single question before us, upon the third exception, is the admissibility in evidence of the accounts and proceedings of the orphans court; we are not, therefore, called upon to express any opinion upon the items of the account, or the manner in which it is stated, no point upon them having been made below.

*Fourth Exception.*—By the Act of 1854, ch. 86, it is made the duty of the register of wills to record all claims against a testator or intestate as they are regularly passed by the orphans court. The object of the registry is, no doubt, to give notice to the administrator and others interested, of the existence and amount of the claims preferred; it does not conclusively establish them against parties contesting them; but the registry made under the Act, is an official record, which was admissible under the pleadings as *prima facie* evidence, to show the amount of debts; leaving to the plaintiff the right to offer evidence to prove their invalidity. This is a new point in practice, and, we think, was correctly ruled by the circuit court.

72　　v 17

The *fifth* and *sixth exceptions* raise the question of the admissibility in evidence of two bills of sale, one from the plaintiff and J. D. Brumbaugh to John Boyd, dated the 18th day of April 1856, conveying to Boyd, for the consideration of $400, one-third of the printing establishment, with the appurtenances, and the other a bill of sale from Boyd to the defendant, dated the 6th of February 1858, conveying the same one-third portion or interest in the · printing establishment. The former of these bills of sale is referred to in the articles of agreement between the plaintiff and Jacob S. Marshall, deceased, and described as if it were intended to be a mortgage or security for the sum of $400, and one of the stipulations in the agreement, on the part of Jacob S. Marshall, was, that he would assume the payment of that sum to Boyd. Although absolute on its face, the bill of sale to Boyd was doubtless intended as a mortgage; all the parties have so treated it, and the subsequent bill of sale to the appellee was designed as a release of the mortgage. They were, in our opinion, competent and admissible evidence in the cause, to show the existence of the lien on the property, and the payment by the appellee of money due to Boyd by the intestate, under his contract with the appellant.

The *seventh exception* was taken to the rejection by the circuit court of certain evidence therein stated, which was offered by the appellant for the purpose of charging the appellee with a *devastavit*. We think the evidence was admissible. If the issue is properly made by the pleadings, there can be no doubt but that, in a suit against an executor or administrator, by a creditor of the decedent, it is competent to charge the defendant with negligence, or mal-administration of the estate, if it can be established by proof. The appellee has argued that this can be done only by an action on the testamentary bond, and referred to *Hagthorp vs. Hook*, 1 *G. & J.*, 274, in support of his argument. The language referred to, when taken in connection with the context, will not bear the construction put on it by the appellee. The chancellor was speaking of the rights of an administrator *de bonis non*, under the Act of 1798. This is a proceeding by a

creditor under the Act of 1802, ch. 101, claiming to recover from an administrator his just proportion of the assets of the deceased, for which the administrator is, by law, responsible. If, in such a suit, no inquiry could be raised of a *devastavit* by the administrator; it would be difficult to perceive how the creditor could, by a proceeding at law, ever recover for a *devastavit*. For he cannot sue on the bond until after judgment recovered against the administrator, and *"nulla bona* returned, or other apparent insolvency or insufficiency of the person or effects of the executor or administrator," &c., *(Act of* 1720, *ch.* 24;) and when such suit is instituted, the plaintiff would be limited, in his right of recovery, to the amount ascertained by the previous judgments to be due him out of the assets. The only question of difficulty we have had in this case, has grown out of the form of the pleadings. But, in our opinion, the replication charging the defendant with assets received, and which *ought to have come* to his hands, is sufficient to open the inquiry presented under the seventh exception.

The *eighth exception* brings before us the three prayers offered by the appellant, and rejected by the circuit court. What has been said, in disposing of the seventh exception, is applicable to the second and third prayers, which, we think, for the reasons already stated, ought to have been granted. They seek to charge the appellee with negligence in conducting the administration, which was within the issue made by the pleadings. The same reasoning will apply to the first prayer, which ought to have been granted. Any sperate debts due the deceased, which may have been lost by the negligence of the defendant, in failing to collect them, he is chargeable with as assets. As this case will be sent back under *procedendo*, we deem it proper to say, that the rebutting evidence offered by the defendant, and contained in his exception, would be admissible.

*Ninth Exception.*—In our opinion, the circuit court erred in granting the defendant's prayer contained in this excep-exception. Property of the intestate remaining in the hands of the defendant, *in specie*, is assets for the purposes of this

Seighman *vs.* Marshall's Adm'r.

suit, and to be estimated in ascertaining the amount which the plaintiff is entitled to recover, unless the defendant proves that they remain unsold without his fault or negligence.

We affirm the ruling of the circuit court on the first, second, third, fourth, fifth and sixth exceptions; but reverse on the seventh, eighth and ninth exceptions.

*Judgment reversed and procedendo awarded.*

(Decided November 4th, 1861.)