# FRANK S. DUDLEY

## vs.

## CLARENCE M. ROBERTS.

*Chattel Mortgage—Deed of Trust—Amount Secured—Lien of Factor—Trover—Effect of Judgment.*

A bill of sale, merely reciting the payment of a nominal consideration by the vendee, but intended to secure a debt owed by the maker to a third person, is to be treated as a constructive deed of trust, and so is not a chattel mortgage within Code, art. 66, secs. 2, 3, providing that no mortgage shall be a lien for any sum other than that specified therein.                    p. 161

A factor does not acquire a lien on goods for previous advances made to one who does not own the goods at the time of shipment, as when the latter has, by the making of a deed of trust, parted with all interest in the goods except as to such surplus of the proceeds as there may be after the satisfaction of the debt secured by such deed.                    p. 162

A court of equity cannot sanction the assumption by a beneficiary of the rights and duties of a trustee, especially where other interests may be involved.                    p. 162

A decision for plaintiff in an action of trover for goods conveyed to him by a deed of trust to secure a loan does not preclude defendant from asserting in equity a right as a beneficiary under the deed of trust to the proceeds of the goods.       p. 162

*Decided November 16th, 1923.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Action by Clarence M. Roberts against Frank S. Dudley, trading as Dudley & Carpenter. From a judgment for plaintiff, defendant appeals. Affirmed.

The rejected prayers of appellant (defendant) were as follows:

*First.*—The defendant prays the court to instruct itself, sitting as a jury, that there is no evidence in this case legally sufficient to entitle the plaintiff to recover, and that the verdict, therefore, must be for the defendant.

*Second.*—The defendant prays the court to instruct itself, sitting as a jury, that the uncontradicted evidence in this case shows that there was no consideration passing from the plaintiff to J. Irving Parker to support the alleged bill of sale mentioned herein, and that, therefore, there is no property in the plaintiff in the goods in question sufficient to support an action in trover, and the verdict must, therefore, be for the defendant.

*Third.*—The defendant prays the court to rule as a matter of law that even if it believes the plaintiff to be the owner of a one-half undivided interest in the tobacco described in the declaration, that if the plaintiff, at a time prior to the shipment of the said tobacco, had knowledge that the tobacco was going to be so shipped and made no effort to prevent J. Irving Parker from shipping the said one-half undivided interest in the tobacco as his, the said Parker's goods, and if the plaintiff did not, prior to the receipt of the tobacco by the defendant, apprise the defendant of his, the plaintiff's alleged ownership of the said one-half undivided interest in the tobacco, then the plaintiff consented to the said shipment and the alleged conversion and the verdict must be for the defendant.

*Fifth.*—The defendant prays the court to rule as a matter of law that even if it finds from all the evidence produced herein that the defendant has wrongfully converted the one-half undivided interest in the property described in the declaration and that the plaintiff is entitled to a verdict, the damages awarded to the plaintiff, if any, will be limited to the amount of the consideration set out in the paper purporting to be a bill of sale mentioned herein and executed by J. Irving Parker to the plaintiff, with legal interest thereon.

*Sixth.*—The defendant prays the court to rule as a matter of law that the recordation of the paper purporting to be a bill of sale and testified to herein gave the defendant constructive notice of a lien on the property described therein to the extent only of the amount stated in the alleged bill of sale to be the consideration for the execution thereof.

*Eighth.*—The defendant prays the court to instruct itself sitting as a jury that the uncontradicted evidence in this case shows that the defendant herein advanced certain money to J. Irving Parker upon the agreement that the one-half undivided interest in the tobacco in question in this suit should be shipped to the defendant and sold by him to repay the said sum of money and that some months after that time the bill of sale relied on by the plaintiff was recorded only in Prince George's County; that after the said bill of sale was so recorded the plaintiff gave his permission and consent that J. Irving Parker should ship his interest in the said tobacco to his commission merchant in Baltimore City, State of Maryland, to be sold without any notice whatever of the said bill of sale, and that the said J. Irving Parker did so ship his interest in the said tobacco to his commission merchant (the defendant herein) without notice to the said defendant of the said bill of sale, and authorized the defendant to sell the same to repay the money advanced by the defendant as aforesaid; that the defendant received the said interest in the said tobacco without any notice of the said bill of sale and sold the same and credited the amount received therefrom on account of the money advanced as aforesaid, and that the verdict, therefore, must be for the defendant.

*Ninth.*—The defendant prays the court to instruct itself, sitting as a jury, that if it finds from all of the evidence in this case that J. Irving Parker, during the month of September, 1921, shipped from Upper Marlboro, Maryland, consigned to the defendant herein, a one-half interest in sixteen (16) hogsheads of tobacco, the goods in dispute in this case; and if it finds that the said goods were shipped by the Pennsylvania Railroad Company upon bills of lading

in the name of J. Irving Parker as the owner and shipped and consigned to the defendant as aforesaid; and if it further finds that the said goods were delivered to the defendant upon the bills of lading aforesaid and were hauled by the wagons of the defendant; and if it further finds that the defendant received the said goods as the property of the said J. Irving Parker and sold the same without any notice by the bills of lading or otherwise that the said J. Irving Parker was not the actual and *bona fide* owner thereof and paid to the said J. Irving Parker, or his order, certain money from the proceeds thereof and applied the balance of the proceeds thereof to money previously advanced by the defendant to the said J. Irving Parker; then the plaintiff is not entitled to recover and the verdict must be for the defendant.

The cause was argued before Boyd, C. J., Thomas, Urner, Stockbridge, Adkins, and Offutt, JJ.

*John Snowden Stanley* and *William Stanley*, with whom were *Stanley & Stanley* on the brief, for the appellant.

*Ogle Marbury*, with whom were *Marbury & Perlman* on the brief, for the appellee.

Adkins, J., delivered the opinion of the Court.

This is a suit in trover by appellee against appellant for the alleged wrongful appropriation to his use of the proceeds of the tenant's part of certain tobacco shipped jointly by William B. Claggett, the landlord, and J. Irving Parker, the tenant, of a farm in Prince George's County, Md., to appellant, a commission merchant of Baltimore City. Parker being indebted to The Matthews-Howard Motor Company, of Washington, D. C., for purchase money for a motor truck, gave the company four conditional sales judgment notes amounting in all to more than $1,700. These were all due in the summer of 1921, and were placed in appellee's hands for collection. He sent for Parker and told him suit would

be brought unless he executed to appellee a bill of sale of his interest in this tobacco, and that the necessary papers were prepared for suit and judgment. Whereupon Parker executed a bill of sale to appellee in form following:

"I, J. Irving Parker of Marlboro, Prince George's County, in the State of Maryland, in consideration of the sum of ten ($10.00) dollars paid me by Clarence M. Roberts of the State and County aforesaid, do hereby bargain and sell to the said Clarence M. Roberts the following property: All of my one-half (½) interest in the crop of tobacco raised by me in the year 1920 on the farm of William B. Clagett, in Melwood District of Prince George's County, Md., consisting of about twenty thousand (20,000) pounds and now stored in the barns on said farm; also all of my one-half (½) interest in the crop of wheat raised by me in the year 1921 on the farm of Robert L. Hall, in Marlboro, District of Prince George's County, Md., consisting of about four hundred (400) bushels, and now stored in the barns on said farm; also one International motor truck, No. 10464, now in my possession.

"Witness my hand and seal this 26th day of July, 1921.

"J. Irving Parker.     (Seal)
"Witness: C. Ernest Coale."

"State of Maryland, Prince George's County, to wit:

"I hereby certify, that on this 26th day of July, in the year nineteen hundred and twenty-one, before the subscriber, a notary public of said State, in and for the county aforesaid, personally appeared J. Irving Parker and acknowledged the foregoing bill of sale to be his act; and at the same time before me also appeared Clarence M. Roberts and made oath in due form of law that the consideration in said bill of sale is true and bona fide as therein set forth.

"(Seal)

"C. Ernest Coale,
"Notary Public."

According to the testimony of appellee, this bill of sale was given to secure the claim of the motor company. According to Parker's testimony it was understood and agreed that appellant's claim for advances was to be first paid. Appellee denies this, but admits that Parker, after the bill of sale was given, spoke of owing other money, and said he was perfectly willing to give appellee the bill of sale because he realized appellee would give him an opportunity to work it out. "I told him after taking the bill of sale and it was recorded I was satisfied Matthews & Howard would not require him to pay the full amount of the indebtedness at once. I expected to get some money out of the wheat mentioned in the bill of sale. It got away from me."

Witness subsequently admitted he did not know whether the wheat had been sold or not. He also testified that Parker still had the truck; that he never demanded from Parker that he should ship the tobacco in the name of the Matthews-Howard Company and that witness knew Parker was going to follow out the custom with them that the tobacco would be shipped in the name of the landlord and tenant; that witness did not want to do anything to embarrass Parker with his landlord, but expected him to turn the money over to witness when the tobacco was sold, or to notify witness he had shipped it, or to notify witness when it was sold.

Appellant and Parker testified that at the time the bill of sale was given Parker was indebted to appellant in the sum of $605.93 for advances; that Parker stated in the presence of Dudley and Roberts that Roberts knew all about Parker's owing money, and that Parker told him that "I would not give the bill of sale except it was understood that my tobacco was to pay the advance I had gotten on it," and that Roberts did not deny it; that this was repeated when they came to Stanley's office, and again Roberts did not deny it. Appellee in his testimony admits that Parker stated in his presence, in appellant's office and in Stanley's office, that Parker told witness that he, Parker, had to pay out other money from this tobacco when he gave witness the bill of sale. He says

he did not deny it because at that time he was trying to keep in the good graces of Mr. Dudley, because he had not then declined to honor a draft which Parker had drawn on him in favor of witness.

The contentions of appellant are:

1.   That appellee had no interest in the property conveyed by the bill of sale, because the evidence admitted without objection showed that there was no consideration money from appellee.

2.   That evidence of appellee himself, as well as that of Parker, admitted without objection, showed that the bill of sale, though absolute in form, was intended as a chattel mortgage, and, under article 66, sections 2 and 3, of the Code, was a lien only for the consideration mentioned therein.

3.   That under article 2, section 1, of the Code, appellant, on receiving the tobacco shipped to him by Parker, was entitled to treat Parker as the owner thereof, and to sell it in accordance with their agreement, and is, therefore, not liable in an action of trover.

With reference to numbers 1 and 2, it may be said that it is true there was no consideration moving from the plaintiff, and that the bill of sale was shown by the undisputed testimony, including that of the appellee himself, to have been intended to secure a debt or debts owed by Parker to a third person or persons. In that light the bill of sale must be treated as a constructive deed of trust. It will be unnecessary therefore to decide whether, if the bill of sale had been given directly to appellee's clients, it would in a court of law, on the testimony in this case, be held to be a chattel mortgage within the meaning of article 66, sections 2 and 3 of the Code.

As a deed of trust it is not a deed in the nature of a mortgage, and therefore does not come within the said Code provisions. *Bank of Commerce* v. *Lanahan,* 45 Md. 396.

As to the third contention, even if article 2, section 1, of the Code, was intended to apply to advances made prior to

the actual shipment of the goods consigned, it in express terms excludes "agricultural productions."

It was decided in *Ruhl* v. *Corner*, 63 Md. 179, that a factor does not acquire a lien for previous advances to one who does not own the goods at the time of shipment, even though they may come into the factor's possession. In the present case Parker, at the time of shipment of the tobacco in controversy, had parted with his title thereto and to all interest therein except as to such surplus of proceeds as there might be after the satisfaction of the debt secured by the deed of trust.

From the views above expressed it follows that we do not find any reversible errors in the rulings of the trial court either on the testimony or the prayers. The reporter is requested to set out the rejected prayers of appellant. The testimony excluded was in no way material to the issues involved.

There is some uncertainty as to whether or not a plea on equitable grounds was filed by appellant. In any event a copy of it was not served on appellee in compliance with the rules of court. But it is immaterial whether such a plea was filed or not. A court of equity could not sanction the assumption by a beneficiary of the rights and duties of the trustee, especially where other interests may be involved.

The affirmation of the judgment will not prevent the appellant from asserting in a court of equity any right which he may be able to establish as a beneficiary under the deed of trust to the proceeds of the tobacco thereby conveyed. But it must be understood that we are intimating no opinion as to the weight of testimony in this case bearing upon the position of appellant in that regard.

*Judgment affirmed, with costs to appellee.*