STATE, USE OF HORSEY, *v.* MARYLAND CASUALTY COMPANY.

[No. 80, October Term, 1932.]

70

*Decided January 18th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*F. Leonard Wailes,* with whom were *Wailes & Robins* on the brief, for the appellant.

*L. Claude Bailey,* with whom were *Miles, Bailey & Williams* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

A certain Gordon C. Riley, who was an automobile dealer, was indebted to one Marjorie R. Coffone in the sum of $4,000, and, for the purpose of giving her a lien to secure the payment of this indebtedness, executed and delivered to her, on July 24th, 1925, what was in form a bill of sale, but what was in reality and in equity a mortgage, whereby he bargained and sold certain goods and chattels for a purporting consideration of $4,000. The instrument was duly recorded and assigned for value by the mortgagee to T. Clayton Horsey on January 3rd, 1927. The goods and chattels, which were not sold in the course of business, remained in the possession of Gordon C. Riley until his death intestate in Wicomico County, where he was a resident. Letters of administration upon his estate were granted on February 23rd, 1926, to Horace Riley, a nonresident of the State of Maryland, who, on the same day, qualified and gave a duly approved bond as such administrator, with the Maryland Casualty Company as surety, in the penalty of $1,500.

The administrator assumed the discharge of his duties and took possession of the goods and chattels in the garage, including such as remained of those bargained and sold by the

mortgage (bill of sale); and had them inventoried and appraised, pursuant to the warrant of the Orphans' Court of Wicomico County, and, on March 23rd, 1926, made return of the inventory and appraisement, which embraced certain of these mortgaged goods and chattels. On the last-named day, the administrator filed a petition in the orphans' court reciting that the personal estate of the intestate consisted of a large number of automobile parts, automobiles, and their accessories, in a building where the intestate had, in his lifetime, carried on a garage, and that it would be for the advantage of all persons interested in the estate that these articles be sold promptly; and praying that the court pass an order authorizing and empowering the sale. The order sought was immediately granted by the court; and a list of the sales accordingly made by the administrator was returned to the court on October 27th, 1927. The aggregate of the sales, which were approved by the orphans' court and which constituted all the estate of the decedent, was $917.65.

Marjorie R. Coffone had filed in the Orphans' Court of Wicomico County her mortgage (bill of sale) claim of $4,000 against the estate of the intestate, and on October 29th, 1926, it had been approved, passed, and placed on the claim docket in the office of the register of wills of Wicomico County as a claim against the estate. The assignment indorsed on the back of this mortgage (bill of sale) was on January 3rd, 1927.

The administrator stated his first and final administration account, with the approval of the court, on December 13th, 1927. By this account he charged himself with $917.65, the proceeds of sale of the decedent's goods and chattels, which embraced such of those bargained and sold in the mortgage (bill of sale) as remained at the death of the intestate. After an allowance for costs, expenses, commissions, and other disbursements, there was a residue of $655.97, which was distributed, in the words of the account, "to T. Clayton Horsey, assignee of Marjorie R. Coffone, as a credit upon Bill of Sale dated July 24, 1925, as per order of Orphans' Court dated Nov. 15, 1927."

After the account was stated, the assignee demanded of the administrator the payment of $655.97, less a credit of $80 for a chattel received, and the administrator declined to pay. The administrator is a resident of Delaware, and has no property in Maryland or elsewhere. The action at bar was accordingly instituted in the Circuit Court for Wicomico County by the State of Maryland, at the instance and for the use of T. Clayton Horsey, against the Maryland Casualty Company, a corporation of the State of Maryland, on the bond of Horace C. Riley as administrator of Gordon C. Riley, deceased, with the said company as the surety thereon. The case was tried by the court, sitting as a jury, and the verdict and judgment were for the defendant.

The course which the *nisi prius* court adopted in granting the motion to exclude the testimony taken subject to exception, and the prayer of the defendant denying the plaintiff's right to recover, which are the two rulings to which an exception was taken, was based upon the theory that the assets which had come into the hands of the administrator were not assets of his intestate, because the decedent had bargained and sold them by a duly executed and recorded bill of sale to Marjorie R. Coffone, the assignor of the plaintiff.

It is true that personalty bargained and sold by a decedent, while living, are not assets of his estate for administration by his personal representative. The basis upon which this statement rests is that where a party has parted by sale with both title and interest in property, neither his next of kin nor his personal representatives can acquire therein either title or interest by his death. *Dorsey v. Smithson,* 6 H. & J. 61; *Allein v. Negro Jim Sharp,* 7 G. & J. 108; *Kinnemon v. Miller,* 2 Md. Ch. 407; *Salmon v. Clagett,* 3 Bland, 172; *Biemuller v. Schneider,* 62 Md. 558. See valuable note to *Chester County Trust Co. v. Pugh,* 241 Pa. 124, 88 A. 319, Ann. Cas. 1915B, 211, as reported 50 *L. R. A.* (N. S.) 320 *et seq.*

The record at bar does not, however, present such a case. It is true that the intestate had executed and delivered a document of title, purporting to be a bill of sale, to one

Marjorie R. Coffone, but it is always permissible to show that the true nature of the transaction was the giving and taking of security for a loan, and that the document was to serve as a mortgage, and that the real relation of the parties was that of mortgagor and mortgagee. *Ing v. Brown,* 3 Md. Ch. 521; *Farrell v. Bean,* 10 Md. 217, 228; *Laeber v. Langhor,* 45 Md. 477, 481; *Booth v. Robinson,* 55 Md. 419, 449-451; *Artz v. Grove,* 21 Md. 456, 474; *Dudley v. Roberts,* 144 Md. 155, 161, 124 A. 883.

It is upon equitable principles that a bill of sale is transformed to an equitable mortgage, and, while the remedy is in equity, the parties or their legal representatives may accept the instrument as an equitable mortgage, and govern and conform the assertion and settlement of their respective rights and liabilities with reference to the actual relation between them of debtor and of creditor, with a pledge of property having been given, and received as security for the debt. See Code, art. 21, sec. 54; *Seighman v. Marshall,* 17 Md. 550, 570. So, while relief is in equity, when the parties are not in agreement or cannot agree because of some incapacity, and the orphans' court has no jurisdiction to decide and declare a bill of sale to be an equitable mortgage, yet the orphans' court does have jurisdiction to consider and pass an equitable claim against the decedent. Code, art. 93, secs. 85, 88, 99, 102, 103, 105, 118; *State v. Reigart,* 1 Gill, 1, 28, 29; *Stevenson v. Schriver,* 9 G. & J. 324, 336; *Schnepfe v. Schnepfe,* 124 Md. 331, 335-337, 92 A. 891; *Wingert v. State,* 125 Md. 536, 541, 94 A. 166; *Crothers v. Crothers,* 121 Md. 114, 119, 88 A. 114; *Bagby on Executors and Administrators* (2nd Ed.), sec. 96; *Newcomer v. Beeler,* 116 Md. 650, 82 A. 460; *Conner v. Ogle,* 4 Md. Ch. 449; *Owens v. Collinson,* 3 G. & J. 25, 38; *McLaughlin v. McGee,* 131 Md. 156, 161, 101 A. 682; *Levering u. Levering,* 64 Md. 413, 2 A. 1.

While the passage of the claim is authority for the personal representative to pay it, the personal representative, in this event, or the claimant, if the claim should be rejected by the orphans' court, must, unless the matter be brought with-

in some of the few statutory exceptions, proceed at law or in equity in order to have the controversy between them adjudicated and conclusively determined, since the orphans' court is ordinarily without jurisdiction of such litigation. *Badders v. O'Brien,* 114 Md. 454, 455, 79 A. 917; *Houck v. Houck,* 112 Md. 131, 76 A. 581; *Strasbaugh v. Dallam,* 93 Md. 715, 50 A. 417; *Schwallenberg v. Jennings,* 43 Md. 559; *Bowie v. Ghiselin,* 30 Md. 556; *Bell v. Funk,* 75 Md. 371, 372, 23 A. 958; *Daugherty v. Daugherty,* 82 Md. 229, 33 A. 541; *Bagby's Executors and Administrators* (2nd Ed.), secs. 84, 97.

The proof on this record is that the bill of sale was an equitable mortgage, and the claim of the plaintiff against the decedent was the debt for which this equitable mortgage was given and taken as security for its payment. The creditor, therefore, had a provable claim against the estate of the debtor; and the administrator had title, at least, to the equity of redemption in the goods and chattels mentioned in the instrument. It follows that the intestate, who was in possession at the time of his death, had an interest in the personalty, subject to a mortgage claim. The law provides that the executor or administrator of the decedent must make an inventory which shall embrace all the personal assets of the decedent, with the exception of wearing apparel and the provision which at death had been laid up for the consumption of his family on his home or mansion farm. Code, art. 93, secs. 211-231; *Fowler v. Brady,* 110 Md. 207, 210, 73 A. 15; *Pratt v. Hill,* 124 Md. 252, 258, 92 A. 543. The administrator had physical possession of all the intestate's goods and chattels, as well as the equitable title, and, although the legal title was in the creditor as mortgagee (vendee), the inventory should have embraced these goods and chattels. *York v. Md. Trust Co.,* 150 Md. 354, 361-364, 133 A. 128.

Furthermore, whatever title the intestate had to his personal property passed at his death to his administrator, who had, also, physical possession of all the goods and chattels. The bill of sale contained no covenant nor warranty of title, and merely bargained and sold "8 Lupton Steel Bins and

parts; 1 Lupton steel show case, 1 desk, 2 chairs, 1 National Cash Register, 1 Ohio Generator test stand; 1 Jefferson Coil tester, 1 Tunger Battery charger; 25 fenders; 7 wheels, 2 Truck Wheels; 3 Tractors; 3 sets tractor fenders; 1 Oakland Touring car; 1 Ford Touring car; 1 Ford Coupe; I rolling jack." The premises, town, county or state where these articles were is not given. The business in which the seller was engaged or the uses to which these things were put is not mentioned. While some of the smaller articles are not susceptible of any more accurate description than the place where they were located and in whose possession they were and would remain, the more important goods and chattels can be described with certainty. Although there are numerous cash registers of the same make, and many automobiles and tractors of the same manufacture and design as those named in the bill of sale, yet every one may be positively identified by its motor or serial number, yet none is given. No attempt is made to describe anything distinctly; and unless there is a description sufficient to identify the subject-matter intended to be granted with reasonable certainty, according to the nature of the subject, the bill of sale is defective, and title does not pass. Code art. 21, secs. 45, 44; *Fersner v. Bradley,* 87 Md. 488, 492, 493, 40 A. 58. See *Berry v. Derwart,* 55 Md. 66, 72; *Schaidt v. Blaul,* 66 Md. 141, 144, 6 A. 669.

About six months had passed between the date of the purporting bill of sale and the death of the bargainor. During this period the bargainor had remained in possession of the garage, carrying on there his business as automobile dealer, and, at his death, the administrator had received in his representative capacity the articles which then remained. The defective description of the goods and chattels which had been intended to be transferred by the purporting bill of sale prevented title to the subject-matter passing to the bargainee, so that the title had devolved upon the administrator. Even upon the assumption that the bill of sale was sufficient to pass the legal title, there were some things which patently were not within its terms, and, with respect to those

which were, the bill of sale was operative as a mortgage, leaving an equity of redemption in the administrator. In any aspect which the facts presented, it became the administrator's duty to return an inventory of these goods and chattels in order to preserve the estate, which was insolvent, for a due administration. If he had not done so, he would have failed in his duty as administrator, and any resultant loss to the estate would have been a liability under his bond. *Supra.*

The best proof of the propriety and regularity of his course is that neither the bargainee under the bill of sale nor her assignee asserted any claim to title, either in the capacity of owner by virtue of the tenor of the instrument or in the position of a mortgagee in consequence of the real nature of the transaction, but acquiesced in the title asserted and the action taken by the administrator; and filed, with the approval of the orphans' court, the purporting bill of sale as a claim against the assets in the hands of the administrator.

The court excluded the records and testimony which tended to show the facts stated. For the reasons which have been set forth, there was error in this ruling. If this testimony had not been struck out, there would have been error in granting the prayer taking the case from the consideration of the court, sitting as a jury, as the testimony would then have been sufficient to carry the plaintiff's case to the jury. *Ruby v. State, use of Vernay,* 55 Md. 484; *Biays v. Roberts,* 68 Md. 510, 13 A. 366; *Sloan v. Sloan,* 117 Md. 151, 152, 83 A. 38; *Owens v. Collinson,* 3 G. & J. 25; *Seighman v. Marshall,* 17 Md. 550, 569; *Evans v. Iglehart,* 6 G. & J. 171, 200.

*Judgment reversed, and cause remanded for a new trial, with costs to the appellant.*

DIGGES, J., concurs in the result.