## VINALL v. HENDRICKS ET AL.

[No. 4,842. Filed June 28, 1904.]

APPEAL AND ERROR.—*Parties.*—In an appeal by plaintiff from the insufficiency of a judgment in a suit to foreclose a chattel mortgage, other lien holders who were made parties, and whose interests were not joined with plaintiff, were properly made appellees. *pp. 414, 415.*

SAME.—*Marginal Notes.*—The inadequacy of marginal notes in a bill of exceptions containing the evidence, in the consideration of an assignment of error requiring an examination of the evidence, is not sufficient ground for dismissing the appeal, where there are assignments of error to be considered which do not involve an examination of any of the evidence. *p. 415.*

SAME.—*Conclusions of Law.*—*Joint Assignment.*—An assignment that the court erred in its conclusions of law is not available unless all of the conclusions of law are erroneous. *p. 415.*

MORTGAGES.—*Foreclosure.*—*Substituted Property.*—*Injunction.*—*Good-Will.*—The owner of a printing establishment in which a daily and weekly newspaper were published executed a mortgage on the presses, type, etc., and thereafter printing presses owned by mortgagor's wife were installed, the mortgaged property stored in a different building and the newspapers, under a different name, were printed and sent to the old patrons. *Held,* that the mortgagee, on foreclosure, had no rights in the property substituted, and that though the mortgage included the good-will of the business, the mortgagee could not enjoin the mortgagor's wife from conducting the business in her own name with her husband as agent. *pp. 415-422.*

From Marshall Circuit Court; *John D. McLaren,* Special Judge.

Action by George Vinall against William G. Hendricks and others. From a judgment giving plaintiff insufficient relief, he appeals. *Affirmed.*

*E. C. Martindale* and *S. N. Stevens,* for appellant.
*L. M. Lauer,* for appellees.

BLACK, C. J.—The appellant, who was the holder of two promissory notes which, with a number of others, were executed by the appellee William G. Hendricks, all being secured by the maker's chattel mortgage on certain property purchased by him from the payee and mortgagee,

brought suit to recover upon said two notes against the maker thereof, and to foreclose the chattel mortgage, making a number of other persons parties defendant for various reasons alleged. Some of the appellees, who make no question as to the propriety of naming them as such in the assignment of errors, have moved to dismiss the appeal because, it being a vacation appeal, three other persons named as appellees in the assignment of errors should have been named, it is claimed, as appellants, and notified as such, and because, also, of alleged failure of the appellant to make sufficient marginal notes in the bill of exceptions containing the evidence. Two of these three appellees were holders of mortgage liens on the mortgaged property, and were made defendants for the purpose of the foreclosure of the appellant's mortgage lien, and the sale of the mortgaged property under the decree free of encumbrances. The third was the payee and mortgagee, who had assigned in writing to the appellant the two notes on which he brought suit, and who was made a defendant by a cross-complaint for the foreclosure of a prior mortgage to which the property was subject when sold by this party to the appellee William G. Hendricks, on which cross-complaint the prior mortgage was foreclosed in this suit. The appellant and these three parties were not united in interest in the decree rendered, against which the appellant, dissatisfied with the judgment, alone complains.

The interest of the appellant, except as against the appellee William G. Hendricks, the maker of the notes in suit, was an interest in the property in controversy, and was a separate interest, and not one held or claimed by him jointly with any of the appellees. It was proper to make parties to the appeal any of them whose interests would be affected by the judgment on appeal, but none of them were so joined in interest with the appellant in the decree as to require him to unite them with himself as appellants. By making them appellees they were placed in

the proper attitude to resist his attack on the judgment, with which the appellees are satisfied.    See *Zimmerman* v. *Gaumer,* 152 Ind. 552; *Abshire* v. *Williamson,* 149 Ind. 248; *Hunderlock* v. *Dundee Mortgage, etc., Co.,* 88 Ind. 139; *Garside* v. *Wolf,* 135 Ind. 42.

The second reason assigned in the motion to dismiss the appeal relates to alleged insufficiency of the marginal notes upon certain pages of a bill of exceptions, where the testimony of two of the witnesses upon the trial is set out.   No objection is suggested to the marginal notes upon other portions of the record, upon which a specification in the assignment of errors is based, for the consideration of which no reference to the evidence is necessary or proper.   Whatever effect should be given to a partial inadequacy of marginal notes in a bill containing the evidence, in the consideration of an assignment of error requiring an examination of the evidence as a whole, or the testimony of particular witnesses, we can not regard it as sufficient ground for the dismissal of the appeal where there are assignments of error to be considered which do not involve an examination of any of the evidence.   The motion to dismiss can not be sustained.

The court rendered a special finding, with four separately numbered conclusions of law, to each of which the appellant excepted.   He has assigned here that the court erred in its conclusions of law; thereby attacking the conclusions jointly and not separately.

The first conclusion, relating to the right of the appellant to recover on the two notes sued on by him, was wholly in his favor, and no objection to it has been suggested. Such an assignment of error can not avail unless all the conclusions of law be wrong.   *Saunders* v. *Montgomery,* 143 Ind. 185; *Jones* v. *Mayne,* 154 Ind. 400; *Chicago, etc., R. Co.* v. *State, ex rel.,* 158 Ind. 189.

The motion of the appellant for a new trial was overruled, and it is contended on his behalf that the decision

was not sustained by sufficient evidence. One Ed S. Brooke, being the owner of a certain printing establish- lishment in the city of Plymouth, Marshall county, known as "The Republican office," where he published two news- papers—a weekly paper called "The Plymouth Repub- lican," and a daily paper called "The Plymouth Evening News"—on January 9, 1897, executed his promissory note for $2,300 to the St. Joseph County Savings Bank, one of the appellees, and, to secure the payment thereof, exe- cuted to the payee his mortgage upon certain specified printing materials and appliances, including, amongst other things, certain printing presses, type of various kinds, cases, newspaper headings and subheadings, also office fur- niture and fixtures, including stoves, lamps, stools, office chairs, and common chairs, tables, desk, iron safe, pictures, maps, atlases, dictionaries, and all other books, stock on hand of paper, inks, engine "and all other property of every kind and description, now owned and held by the mortgagor in his printing office known as 'The Republican office,' situated in the Wheeler brick building on the north- east corner of Michigan and Laporte streets, in the city of Plymouth, Marshall county, Indiana." In May, 1897, Brooke sold the printing establishment, and all the prop- erty contained and used therein, to Harriet H. Oglesbee, subject to the mortgage to the bank, and she took possession and operated the printing office until May 26, 1898, when she sold and delivered the same to the appellee William G. Hendricks, who, as part of the consideration, assumed and agreed to pay the mortgage to the bank, and, for an unpaid balance of purchase money, he executed to Harriet H. Oglesbee a number of promissory notes, two of which were those sued upon by the appellant, and, to secure them, executed the mortgage set up in appellant's complaint, which covered all the property embraced in the former mortgage, with some miscellaneous articles added to the establishment by Harriet H. Oglesbee while she was the

owner thereof.   William G. Hendricks continued to operate
the office and to issue the two newspapers until October 10,
1901.   While he was so conducting the business, he, with
the consent of all the mortgagees, sold one of the presses
and a gasoline engine covered by both mortgages, and ap-
plied the proceeds of the sale in part payment of the note
held by the bank.   His wife was the owner of a large print-
ing press and folder, which was thereafter used in the es-
tablishment; and his wife and his brother, being the own-
ers of certain printing materials and job presses and other
property necessary to constitute a printing plant, brought
it from another city and placed it in the office of William
G. Hendricks, and gave him the use thereof for the print-
ing of the two newspapers.   The property thus introduced
and belonging to his wife and brother was separable from
the mortgaged materials.   October 10, 1901, William G.
Hendricks stored the tangible mortgaged property, except
the press and engine, which had been sold, in the Bissell
building, in Plymouth, and tendered the key thereof to an
agent of the bank, who refused to receive it, and William
G. Hendricks then ceased to publish the newspapers which
up to that time he had issued; and the same day his wife,
under the name of Hendricks & Co., commenced the publi-
cation, at the same office where her husband had carried
on the business, of two newspapers, weekly and daily, un-
der the title "The Plymouth Tribune," with the name R.
B. Oglesbee as editor; and her husband, William G. Hen-
dricks, managed and controlled the publication of the news-
papers and other business of the office as agent for his wife,
he being wholly insolvent.   The new newspapers were sent
to the patrons of the old ones.   This suit was commenced
on the same day.

The appellant is satisfied with those portions of the de-
cree whereby his mortgage lien and that of the bank were
foreclosed, and the latter was adjudged to be the superior

Vol. 33—27

lien, and no question is made as to the amounts awarded by the judgment. In his complaint the appellant prayed for the foreclosure of his mortgage, and that a receiver be appointed "to take charge of and sell said property;" that the property be sold, and the proceeds be distributed according to the interests of the parties; and that "defendants Hendricks," being William G. Hendricks and Mary A. Hendricks, his wife, be perpetually enjoined from publishing the weekly and daily newspapers known as "The Plymouth Tribune," the publication of which was stated in the complaint to have been commenced, and from supplying the same to the subscribers to the newspapers, the publication of which had so ceased. The complaint was not verified, and no undertaking was filed, and the prayer only contemplated the granting of the relief asked upon final adjudication.

The somewhat desultory brief for the appellant seems to proceed upon the theory that the property, other than that embraced in the mortgages, which had been introduced and used in the printing establishment, should have been subjected to the mortgages; but, as we have seen, such additions were owned by strangers to the mortgages. They seem to have been sufficient for the purposes of a newspaper office, and with them Mary A. Hendricks had commenced the publication of two newspapers, her husband acting therein as her agent. The tangible mortgaged property still owned by him subject to the mortgages had been separated and placed in another building. The owners of the property with which the new newspapers were printed, one of whom (Frank Hendricks) was not a party to the suit, could not be deprived of their title to their thus ascertained property by sale under this proceeding; nor could Mary A. Hendricks be enjoined from prosecuting a lawful business, using therein none of the mortgaged property. In view of the fact that the new newspapers were published by another than the mortgagor, and that property other than the

mortgaged property was used in the business, this property in use by Hendricks & Co. could not properly be given into the hands of a receiver or be subjected to sale by the sheriff, and there does not appear to have been any occasion for the appointment of a receiver on final hearing. It was sufficient to order the sale of the mortgaged property by the sheriff.

The court found that the good-will of the business was embraced in both of the mortgages. The appellant contends that the mortgage to the bank did not embrace the good-will, which was by that name embraced in the second mortgage; and, if we have rightly understood counsel for the appellant, they seem to contemplate the propriety of selling the tangible property separate from the good-will of the business, under the older mortgage, and then selling the good-will separately under the second mortgage. It is to be observed that in the mortgage of William G. Hendricks there was no agreement or stipulation that, upon the foreclosure and sale of the property mortgaged, he would not engage in the same business in the same city; and, furthermore, the new business, and the tangible property with which it was carried on, were not owned by the mortgagor, who occupied therein the relation of an employe of the owner. The complaint of the appellant proceeded upon the theory that the property of others introduced into the printing office was inseparable from the mortgaged property, and also upon the theory that William G. Hendricks transferred or pretended to transfer all of the mortgaged property to Hendricks & Co., who still held it, neither of which theories was sustained by the facts.

In *Seighman* v. *Marshall,* 17 Md. 550, 569, it was held that the subscription list and good-will of a printing office were of inappreciable value, and of too uncertain and contingent a nature to be the subject of appraisement and estimation.

In *Holden* v. *M'Makin,* 1 Pars. Eq. Cas. (Pa.) 270, 301,

it was said: "In *M'Farlan* v. *Stewart,* 2 Watts 111, the subscription list of a public journal was held at law to pass to a purchaser of the printing materials at a sheriff's sale, as incident and accessory to the purchase of the establishment. * * * If a court of law would so regard it for the benefit of a purchaser at sheriff's sale, would not a court of equity, in administering the estate of a deceased partner, consider it as a thing equally inseparable from the common property; and regard the entirety made up of the presses, types, printing materials, and subscriptions, as forming the printing and publishing establishment, and appropriate it accordingly?"

In *Williams* v. *Farrand,* 88 Mich. 473, 50 N. W. 446, 14 L. R. A. 161, it was said to be established by the clear weight of authority that though a retiring partner may have assigned his interest in the partnership business, including the good-will thereof, to his copartner, he may, in the absence of an express agreement to the contrary, engage in the same line of business in the same locality, and in his own name. In the same case it was said: "Good-will may be said to be those intangible advantages or incidents which are impersonal, so far as the grantor is concerned, and attach to the thing conveyed. Where it consists of the advantages of location, it follows an assignment of a lease of that location. Again, it may not depend at all upon location, as in the case of a newspaper, and it would follow an assignment of all interest in the plant, property, effects, and business." It was also said that the doctrine that a retiring partner, who has conveyed his interest in an established business, whether the good-will be included or not, can not personally solicit the customers of the old firm, has no support in principle; that he does not agree that the benefit derived from his connection with the old business shall continue, or that the old business shall continue to have the benefit of his name, reputation, or services, nor does he guarantee the continuance of that patronage which

may have been attracted by his name or reputation; that he sells only those advantages and incidents which attach to the property and location, rather than those which attach to the person of the vendor.

In *Cottrell* v. *Babcock, etc., Mfg. Co.,* 54 Conn. 122, 6 Atl. 791, it was held that the sale by one partner of a manufacturing firm to the other of the interest of the former in the property of the firm and the good-will of the business, does not preclude the seller from setting up a similar business in any place he chooses, and, by advertising, letters, and personal application, soliciting the custom of old customers of the firm, so long as he does not represent himself as the successor of the old firm, or represent the purchasing partner as not carrying on the business. It was held that, to warrant a court of equity in decreeing a restraint of trade, there must be a clear contract for such restraint.

In *Marcus Ward & Co.* v. *Ward,* 40 N. Y. St. Rep. 792, 15 N. Y. Supp. 913, it was held that a person who has sold his business and the good-will thereof to another, in the absence of an express agreement to the contrary, may lawfully apply to any of the customers of the old business and ask them to continue their custom with him.

It was held in *Close* v. *Flesher,* 8 Misc. (N. Y.) 299, 28 N. Y. Supp. 737, that upon the sale of a business and its good-will, without an agreement to refrain from establishing a similar business, there is no obligation to abstain from a rival business or from soliciting the vendee's customers and diverting his trade.

In *Wiley* v. *Baumgardner,* 97 Ind. 66, 49 Am. Rep. 427, it was said that where a person carrying on any business, sells his stock in trade or his business and the good-will, and, in the transaction, agrees not to carry on the same business, with a limitation upon the restraint as to time, but none as to space, the agreement as to such restraint is wholly void.

In the mortgage given to the bank, no values were as-

cribed to the property mortgaged, or to any of the articles therein specified; and we are of the opinion, taking all the contents of the mortgage into consideration, and having regard to the character of the property and the treatment of the transaction by the parties, that the court did not err in regarding the first mortgage as covering the good-will, as well as the second mortgage. We do not find in the case any reference to any lease of real estate as constituting a part of the property involved, or anything making the locality of the business a matter of importance, except that the business was carried on, and the newspapers, with names relating to the locality, were published in the city of Plymouth, Marshall county.

It appears that the mortgagor Hendricks was wholly insolvent, and was carrying on an unprofitable business. With property owned by his wife and brother, his wife commenced the publication of newspapers having names different from those of the old papers, the publication of which was ended by the mortgagor who thereupon placed all the mortgaged materials in storage, and offered to surrender the same to the holder of the senior mortgage. It does not appear but that the purchaser under the foreclosure might have continued the publication of the old newspapers with such materials, except that the press and engine, which had been sold with the consent of the mortgagees, were lacking, and substitutes therefor would be needed. Hendricks, the mortgagor, being insolvent, seems to have desired to give up all of the mortgaged property which he held, and was in the employment of the proprietor of the new newspaper establishment; and she or her husband could not properly be restrained from carrying on her business, or from soliciting patronage from the patrons of the old office and newspapers. Therefore, upon the matters as to which the appellant regards the finding as not supported by the evidence, we are unable to find any reason for interference.

Judgment affirmed.