## In re CALHOUN MOTORS, Inc.
### No. 9802.

District Court, D. Maryland.
May 15, 1944.

---

[1] Justice Oliver Wendell Holmes, Uncollected Letters, N.Y.1936, p. 164.

Louis J Sagner and Paul R. Kach, both of Baltimore, Md., for the trustee.

Bradley T. J. Mettee, Jr., of Baltimore, Md., for Reconstruction Finance Corporation.

CHESNUT, District Judge.

In the course of administration of the Bankrupt Estate of Calhoun Motors, Inc. The Reconstruction Finance Corporation filed a secured claim (including interest to the time of filing, July 8, 1943) in the amount of $16,419.28. This claim embraced the following items:

| | |
|---|---|
| Balance on Loan No. 2084 | $2,059.14 |
| Balance on Loan No. 2158 | 12,795.84 |
| Reimbursable Expense | 564.30 |
| Attorney's Fee | 1,000.00 |

The Trustee in Bankruptcy did not dispute the amount of claim as a general debt, but did object to its allowance as a secured claim for three reasons. These objections were overruled by the Referee. They are now reurged here on the Petition to Review.

The objections are based on three separate contentions (1) that the chattel mortgages purporting to secure the loans were invalid under the General Maryland Law; (2) that they were also totally invalid because the description of the chattels was not sufficient; (3) if the above objections to the claim as a whole are not sustained, nevertheless, the item of $564.30 for "reimbursable expense" and the item of $1,-000 for Attorney's fee are not secured by the mortgages. I will deal with these several objections separately.

1. By the Maryland statutes generally chattel mortgages must be executed and acknowledged and recorded as bills of sale, and "shall be sufficient in form if it contains the names of the parties, the consideration [paid], a description of the property conveyed, and be signed and sealed by the vendor, and dated", but to be good as against third parties such as creditors, there must be an affidavit that the consideration is true and bona fide made by the mortgagee or his agent; and if made by an agent, he must further make affidavit to be endorsed upon the mortgage, that he is agent of the mortgagee. See Annotated Maryland Code of 1939, Article 21, Sections 50, 46, 54, 34, and 35. And by the Maryland Code Article 66, Section 2, provision is made that mortgages to secure future advances shall not constitute a lien

unless the principal sum or sums shall appear on the face of the mortgage and be specified and recited therein, and shall not be valid unless the amounts and the times when they are to be made shall be specifically stated in the mortgage.

It is admitted that the mortgages in question did not fully comply with all these formal requirements; but in 1935 the Maryland Legislature enacted somewhat different formal requirements with respect to chattel and crop mortgages made to certain named Federal Loan Agencies, including the Reconstruction Finance Corporation, "or the Government of the United States or any department, agency or officer thereof." See Maryland Code Art. 21 Sections 56 to 70 inclusive, and the Maryland Act of 1935, Ch. 281.

It is further admitted that the mortgages in question did comply with the formal requirements of this latter statute. The validity of this statute is, however, challenged by the Trustee in Bankruptcy on the ground that it violates Article 3, Section 33 of the Maryland Constitution of 1867 which provides in part "And the General Assembly shall pass no *special* law for any case for which provision has been made by an existing *general* law." (Italics supplied.)

In the Referee's Order filed March 16, 1944, he discusses the objections to the validity of the Act of 1935 and concludes that it did not contravene the State Constitutional provision referred to as properly construed and applied under the Maryland decisions. I agree generally with what the Referee has said on this point but wish to add the following comments.

■ This Constitutional provision has frequently been considered by the Court of Appeals of Maryland with respect to many different Acts of the Legislature, but in only a very few cases have the Acts been held invalid. The cases will be found in the Annotated Code, pages 73 to 75 inclusive. In the purely literal sense there is a plausible argument that the Act of 1935 is a special law relating to chattel mortgages where there was previously a general law upon the subject. But consideration of the Maryland cases will show very clearly that this Constitutional provision is not properly applied in the purely literal sense. It would be tedious and unnecessary for this case, to review the Maryland cases on the point in detail. Their result, and the distinction between them has been succinctly summarized by Mr. Justice Cardozo

in the case of Williams v. Mayor and City Council of Baltimore, 289 U.S. 36, 46, 47, 53 S.Ct. 431, 434, 77 L.Ed. 1015. It was there said:

"Time with its tides brings new conditions which must be cared for by new laws. Sometimes the new conditions affect the members of a class. If so, the correcting statute must apply to all alike. Sometimes the new conditions affect one only or a few. If so the correcting statute may be as narrow as the mischief. The Constitution does not prohibit special laws inflexibly and always. It permits them when there are special evils with which existing general laws are incompetent to cope. The special public purpose will than sustain the special form. City of Baltimore v. United Railways Co., supra, [126 Md. 39, 94 A. 378]. The problem in the last analysis is one of legislative policy, with a wide margin of discretion conceded to the lawmakers. Only in cases of plain abuse will there be revision by the courts."

■ In the later case of Norris v. Mayor and City Council of Baltimore, 172 Md. 667, 192 A. 531, the subject is further considered in a characteristically excellent opinion by the late Judge Offutt, who said (172 Md. at page 682, 192 A. at page 538) "the term 'special law' has in them uniformly been interpreted to mean a special law for a special case;" and, quoting from an earlier Maryland case he continued "The object of the preceding provisions was to prevent or restrict the passage of special, or what are more commonly called private Acts, for the relief of particular named parties, or providing for individual cases." And he added (172 Md. at page 683, 192 A. at page 538) "So it appears to be well settled that a law intended to serve a particular need, to meet some special evils, or to promote some public interest, for which the general law is inadequate, is not a special law within the meaning of that term as used in that section of the Constitution."

■ There is no available Legislative History of the Maryland Act of 1935, but it must be considered in the light of well known facts of which this Court may properly take judicial notice. It was passed at a time of great economic depression, and after the Federal Government had established various financial agencies to aid in the preservation of business enterprises by loans made from Federal funds. It is said by counsel for the Trustee that the Act was apparently passed upon "behest" of these

Federal agencies, but it is probably more realistic to say that it was doubtless passed to facilitate Maryland citizens in obtaining loans from Federal agencies.

It is also well known that the Reconstruction Finance Corporation, in conducting its nation wide activities, has established regional offices in various places for loans to be made within the states in the particular region. The regional office for this territory, including Maryland and seven other states, is situated in Richmond and the business is handled principally from that regional office. It is said the attorneys there employed have to deal with the differing conveyancing statutes of many states. It is also said to be an inflexible rule of the R. F. C. that loans will not be made until the papers have been completely executed and delivered at Richmond. Only thereafter are the moneys advanced. The General Maryland Law with respect to future advances and affidavit to consideration would be difficult, or at least very inconvenient, to strictly comply with, if this general practice and rule of the R. F. C. is to be followed. In consequence it is said that to facilitate chattel mortgage loans by the R. F. C. it has secured somewhat similar statutes in other states, but counsel know of no case dealing with the particular validity of such statutes, although a number of other states do have Constitutional provisions similar to the Maryland one above referred to.

■ I have no reasonable doubt that the Maryland Act of 1935 does not violate the Maryland Constitutional provision. Looking at the well known conditions surrounding the passage of the Act it is clear enough that it was passed to meet the supposed public need arising out of then existing general conditions. Judged in that light it may be said here as was said in Williams v. Mayor et al., supra. "Furtherance of the public good is written over the face of this statute from beginning to end as its animating motive." It was a law for a special purpose rather than a special law in the Constitutional sense. The Maryland case most strongly relied upon by counsel for the Trustee is Baltimore v. Alleghany County Com'rs, 99 Md. 1, 57 A. 632; but an examination of that case will clearly show the act there condemned under the Constitution was of a very different nature from the instant case. Baltimore City v. German-American Fire Ins. Co., 132 Md. 380, 387, 103 A. 980, 983, is a closer case

where the special act was upheld, although of itself not necessarily conclusive. The Court there said: "The statute, upon its face, does not disclose the policy or motive by which the Legislature was actuated in granting the exemption under the statute, and this is not essential to its validity. It is valid if the discrimination is founded upon public policy or upon a reasonable distinction in principle, and is not an arbitrary discrimination." It is conceded by counsel for the Trustee that the special act is not invalid if it includes a reasonable classification with respect to the particular chattel mortgages therein provided for. His contention is that by the general law the class affected embraces all chattel mortgagees and therefore the special law is invalid because it is limited to "Federal Governmental Agencies lending moneys on chattel mortgages". But viewed even in this narrow light of reasonable classification, it is my view that the class affected is a reasonable one as a basis for the Legislative distinction.

The relations between the Federal and State Governments is the very corner stone of our Federal Constitution. There are many situations in which the Federal and State Legislative bodies must inevitably consider their respective relations in the larger public interest. Article 96 of the Maryland Code contains numerous provisions relating to the United States and the State of Maryland growing out of this relationship.

■ 2. With respect to the alleged invalidity of the chattel mortgages by reason of what is said to be an insufficient description of the chattels, little need be added to what the Referee has said. An examination of the mortgages shows that the chattels were described with reasonable particularity. With respect to most of them, covering particular items of machinery, the identifying numbers on the machines were given. It is objected that the particular location was not stated but this seems too critical in view of the papers as a whole. No Maryland case has been cited to sustain the objection here made. The Maryland cases of State v. Maryland Casualty, 164 Md. 69, 163 A. 856, and United States Fire Ins. Co. v. Merrick, 171 Md. 476, 486, 190 A. 335, by applying their reasoning to the facts of the instant case, would tend to support the sufficiency of the description. The objection here made is, as applied to the particular case, purely tech-

nical; because in fact there has been no difficulty or confusion in identifying and selling the chattels covered by the mortgage. The Referee found the identification sufficient and I have no adequate reason for holding his conclusion in this respect clearly erroneous.

3. There is, however, force and substance in the Trustee's objection to the allowance of the two items for reimbursable expenses in the amount of $564.30 and the Attorney's fee of $1,000 as secured by the mortgages. In addition to the particular mortgages the R. F. C. had other financial transactions with the Bankrupt. It took from the Bankrupt certain promissory notes, and also received as further collateral an assignment of accounts. The notes contained printed conditions which it is admitted are broad enough to include the items of expenses and fee here involved; but it is importantly to be noted that the mortgages constituting the security now relied on, do not secure the notes nor is there any reference whatever in the mortgages to the notes. I gathered from the hearing from counsel that the balance now claimed to be due under the mortgages results very largely from numerous debit and credit items between the parties, whereby the balance of the principal on the mortgages has been much reduced. But it further appears that the fee and possibly also the expense items have not heretofore been paid or disbursed by the R. F. C. It is suggested by counsel for the latter that these items could have been paid by the R. F. C. and application of certain receipts by it made to reimburse itself for such payments. But it does not appear that this has been done. The expense items are not based on foreclosure of the mortgages but according to the list offered in evidence, apparently include disbursements made by counsel such as numerous long distance telephone calls and some professional services, apparently not directly, at least, related to the mortgages. It seems to result clearly enough that these items the reasonableness in amount of which are not disputed, are not secured by the mortgage and therefore are not properly allowable as a part of the secured debt.

In this connection counsel for the R. F. C. relies on Tawney v. Clemson, 4 Cir., 81 F.2d 300, 303. That was a Maryland case appealed from this Court in which Judge Soper speaking for the Court, said "We think it is clear from these authorities that provision for an attorney'es fee for collection in a promissory note *secured* by chattel mortgage is valid under the Maryland law, and that the mortgagee has a lien on the mortgaged property for services rendered not exceeding the amount agreed upon." (Italics supplied.) But it appears from the opinion in that case that the note referred to was in fact secured by the chattel mortgage, which is not the case here. And the reference to the record in that case, pages 6, 7, 9 and Exhibits C and D, shows that the mortgages were in the usual Maryland form and specifically referred to the notes as secured by the mortgages. In the instant case the mortgages, while they comply with the special Maryland Act of 1935, admittedly make no reference whatever to any notes but simply provide for the repayment of a specified amount of money. Counsel for the R. F. C. also relies upon the Maryland case of Maus v. McKellip, 38 Md. 231 which was also considered by Judge Soper in Tawney v. Clemson. But that case is also not in point here because the mortgage there expressly secured "all counsel fees and costs which the mortgagee might incur in collecting the mortgage debt."

Counsel for the Trustee has also made some objection here to the Order of the Referee in allowing interest on the claim of the R. F. C. calculated to the time when the Trustee's Distribution Account is filed, which has not yet occurred. Complaint is made that there was unnecessary delay on the part of the R. F. C. in furnishing supporting and detailed accounting for its claim. And it is further objected that the Referee did not impose on the R. F. C. any portion of the expenses of the sale of the chattels mortgaged which, together with some other minor items of property, were sold at private sale for a lump sum somewhat in excess of the whole mortgage claim.

Tawney v. Clemson also considered an objection similar to the last item mentioned. It does not clearly appear in the instant case that the sale of the Bankrupt's property, made free of the lien of the R. F. C., was at the request or by agreement of the R. F. C. In any event it has not been made to appear here that the Referee's action in respect to the matter of interest or pro rating the expenses of the sale was clearly erroneous. However, if the referee considers it appropriate to do so, he may give counsel a further hearing on these two matters, before final statement of the trus-

tee's distribution account, as the particular objections seem not to have been much discussed in the order made by the Referee.

A necessary conclusion is that the Order of the Referee must be modified by excluding from the secured claims the items of expenses and attorney's fee above mentioned; but in other respects the Referee's Order is hereby affirmed.