Filed 8/24/20  Prescription Care Pharmacy v. Optumrx CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| PRESCRIPTION CARE PHARMACY, LLC,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>OPTUMRX, INC.,<br><br>    Defendant and Appellant. | G057279<br><br>(Super. Ct. No. 30-2018-01014006)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Foley & Lardner, Kimberly A. Klinsport, Irina N. Kashcheyeva, John J. Atallah, and Kristina M. Fernandez Mabrie for Defendant and Appellant.

Dorros Law and Torin A. Dorros for Plaintiff and Respondent.

\*        \*        \*

This appeal presents for our review an example of what can happen when over-lawyering muddles a simple concept into opaque and sometimes inconsistent language. If the parties wish to arbitrate a dispute, their agreement should say so in plain language. Here, the parties' contract created an overly complex alternative dispute resolution procedure which resulted in more litigation, not less.

Defendant OptumRx, Inc. appeals from an order denying its motion to compel arbitration. Defendant raises two arguments on appeal. First, defendant contends the court erred by itself determining whether the parties' dispute was arbitrable rather than allowing a panel of arbitrators to determine which claims were arbitrable. Second, assuming the court correctly determined the parties had not delegated the question of arbitrability to a panel of arbitrators, defendant argues the court erred by finding plaintiff's claims did not fall within the scope of the parties' arbitration agreement. For the reasons below, we disagree with defendant's first contention but agree with its second. We accordingly reverse in part and remand for the court to determine in the first instance whether the parties' arbitration agreement was unconscionable, an issue the court did not reach because of its ruling on the scope of the arbitration agreement.

FACTS

Plaintiff Prescription Care Pharmacy, LLC is an independent pharmacy located in Hollywood, Florida. Defendant is a pharmacy benefit manager that manages pharmacy benefits for various health insurance plans. Plaintiff contracted with defendant to fill prescriptions for members of defendant's health plans. Two separate contracts governed the terms of their relationship, and plaintiff was further bound by defendant's provider manuals, which were periodically updated and provided to participating pharmacies. The alternative dispute resolution provisions in these documents are relevant to this appeal.

2

*The Relevant Alternative Dispute Resolution Provisions*

        A.  The 2015 Provider Manual

        Defendant's 2015 manual (the 2015 Provider Manual), which is central to this case, included the following alternative dispute resolution provision:  "Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below to resolve any and all issues and/or disputes between them (hereinafter referred to as a 'Dispute') including, but not limited to all questions of arbitrarily [*sic*], the existence, validity, scope, interpretation or termination of the Agreement or [Provider Manual] or any term thereof prior to the inception of any litigation or arbitration."  The provision also stated:  "In the event a Dispute arises, the party asserting the Dispute shall provide written notice to the other party identifying the nature and scope of the Dispute to the other party sufficient for a reasonable person to be apprised thereof.  If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute . . . .  [¶]  If the party asserting the Dispute has satisfied the requirements of this section thereof, it shall thereafter be submitted to binding arbitration before a panel of three (3) arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association . . . ."

        The provision further stated:  "In the event that any portion of this section or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or this Agreement.  In the event any court determines this arbitration proceeding is not binding or otherwise allows litigation involving a dispute to proceed, the parties hereby waive any and all right to trial by jury in or with respect to such litigation, and such litigation would instead proceed with the judge as the finder of fact."  Finally, the provision stated:  "For purposes of clarity, only the arbitration provisions in

3

this section shall apply to any Network Pharmacy Provider terminations or other determinations made as to a Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator network, pursuant to the [Network Pharmacy Evaluation Committee] review process as stated in the [Provider Manual]. The laws of the State of California and the laws of the United States (U.S.) applicable therein will govern as to the interpretation, validity and effect of the Agreement, the [Provider Manual] and any addendums."

B. The 2008 Provider Agreement and 2011 Pharmacy Network Agreement

In addition to the 2015 Provider Manual, two separate contracts governed the terms under which plaintiff agreed to provide prescription services to members of defendant's plan clients. The first contract was a 2008 provider agreement between plaintiff and defendant's predecessor-in-interest (the 2008 Provider Agreement). The 2008 Provider Agreement included the following dispute resolution provision: "The parties will make a good faith effort to resolve any disputes arising during the term of this Agreement. If they are unable to resolve the dispute through informal discussions, either party may submit a written complaint to the other party describing and proposing a manner of resolving that dispute. The party receiving that complaint will respond by accepting, rejecting, or modifying that proposal, in writing, within thirty (30) days of the date that it receives the complaint." "If the parties are unable to resolve the dispute in accordance with the procedures set forth . . . above, either party may submit the dispute to binding arbitration in accordance with the Rules for the Conduct of Arbitration of the American Arbitration Association (the 'Rules') in effect at the date of commencement of such arbitration by one (1) arbitrator who will be appointed by the American Arbitration Association. The arbitration will take place in Illinois, and will be final and binding."

The second contract was a 2011 pharmacy network agreement between plaintiff and a company that later changed its name to OptumRx Inc., the defendant in

4

this case (the 2011 Pharmacy Network Agreement).  That agreement included a dispute resolution provision that was almost identical in substance to the above-referenced provisions in the 2015 Provider Manual.

*Plaintiff's Complaint*

In 2018, plaintiff filed a complaint against defendant alleging defendant wrongfully terminated plaintiff from its pharmacy network.  According to the complaint, plaintiff submitted millions of dollars in claims to defendant for compound medication prescriptions, which defendant had to pre-approve before plaintiff could provide the medications.  Defendant allegedly adjudicated each claim "as clean and 'paid'" pursuant to the pre-approval process but wrongfully withheld some of the funds from plaintiff.  The complaint further alleges defendant initiated an audit against plaintiff as a "veiled scheme" to justify terminating plaintiff from defendant's network of pharmacies.  Defendant ultimately issued a final audit finding that plaintiff submitted claims at pricing that was well above the lowest "average wholesale price," which is what defendant would pay network pharmacies.  The complaint alleges defendant "had engaged in a clear pattern and practice of fraud, manipulation, deceit, and deception to arrive at the . . . final findings, which led to [defendant's] termination of [plaintiff] from the . . . network of pharmacies" in 2016.  Among other things, the complaint alleges defendant intentionally used improper and incorrect prices to establish the average wholesale price for certain medications to find plaintiff had overcharged defendant.

As a result of its termination from defendant's pharmacy network, plaintiff claims it lost millions of dollars in income.  The complaint accordingly alleges causes of action for breaches of the 2011 Pharmacy Network Agreement and 2008 Provider Agreement, breach of the implied covenant of good faith and fair dealing related to those two agreements, intentional and negligent interference with those two agreements, violation of Florida prompt pay statutes, money had and received, conversion, goods and

5

services rendered, fraudulent and negligent representation or omission of material facts, and violation of Florida's consumer protection statutes.

Before plaintiff filed the complaint, it sent a notice of dispute to defendant demanding payment and requesting an in-person meeting pursuant to the dispute resolution provision in the 2011 Pharmacy Network Agreement. Plaintiff warned it would file suit in federal court. Defendant responded the in-person meeting was not required: "[N]ote that given the basis for termination included shortages/FWA and not complying with the Pharmacy Manual, we had a right to immediately terminate per section 5.2.3 of the Pharmacy Agreement, which is an exception to providing a dispute resolution process in section 10.1" under the 2011 Pharmacy Network Agreement. Regardless, defendant agreed to participate in a telephonic pre-dispute resolution meeting. Plaintiff's counsel responded, "I and my client also appreciate [defendant's] willingness to engage in resolution discussions even barring that the ADR provisions do not apply in this situation . . . ." After their discussions fell through, plaintiff filed the operative complaint.

*Defendant's Motion to Compel Arbitration and the Court's Order*

A few months later, defendant filed a motion to compel arbitration contending plaintiff's claims were subject to the arbitration provisions in the 2008 Provider Agreement and 2011 Pharmacy Network Agreement. Defendant argued plaintiff's claims arose from alleged violations of those two agreements and any dispute as to whether the claims were subject to arbitration should be decided by an arbitrator.

The court denied defendant's motion and found the 2015 Provider Manual superseded the 2008 Provider Agreement and 2011 Pharmacy Network Agreement. First, the court held the parties did not clearly delegate arbitrability decisions to an arbitrator because the delegation clause in the 2015 Provider Manual was ambiguous. While the delegation clause required arbitration of any "Dispute," which was defined to

6

include "all questions of arbitrarily [*sic*]," the court noted another provision "contemplates arbitrability may be decided by the court." The court relied on the following provision: "*In the event any court determines this arbitration proceeding is not binding or otherwise allows litigation involving a dispute to proceed*, the parties hereby waive any and all right to trial by jury in or with respect to such litigation, [and] such litigation would instead proceed with the judge as the finder of fact." (Italics added.) According to the court, there was an inconsistency between this provision and the delegation provision.

Second, even assuming the delegation clause clearly delegated arbitrability decisions to an arbitrator, the court held defendant's assertion of arbitrability was "wholly groundless because the arbitration agreement [was] internally inconsistent." The court relied on the following provision: "*Other than with respect to issues giving rise to immediate termination hereof* or non-renewal hereof, the parties will work in good faith as set forth below to resolve any and all issues and/or disputes between them (hereinafter referred to as a 'Dispute') *including, but not limited* to all questions of arbitrarily [*sic*], the existence, validity, scope, interpretation or *termination of the Agreement or* {Provider Manual] or any term thereof prior to the inception of any litigation or arbitration." The court explained this provision was internally inconsistent because it required arbitration of questions about "'the existence, validity, scope, interpretation or termination of the Agreement or [Provider Manual]'" while also expressly excluding "arbitration of 'issues giving rise to immediate termination.'" The court noted the 2015 Provider Manual defined immediate termination to include "'Breach of any of the terms set forth in the Agreement [or] [Provider Manual].'"

Finally, assuming "the arbitration agreement could somehow be reconciled," the court found the complaint alleged wrongful termination and contract breaches that would fall within the express exclusion regarding immediate termination issues.

7

Defendant contends the court erred by finding the parties did not delegate arbitrability issues to an arbitrator. According to defendant, the parties clearly and unmistakably delegated questions of arbitrability to a panel of arbitrators because the 2015 Provider Manual: (1) defines a "dispute" subject to arbitration to include questions of arbitrability; and (2) incorporates the Commercial Dispute Procedures of the American Arbitration Association (AAA). Assuming the court correctly determined the parties did not delegate arbitrability issues to an arbitrator, defendant argues the court erred by finding plaintiff's claims were not within the scope of the arbitration provision in the 2015 Provider Manual.

Because the 2015 Provider Manual contains a severability provision suggesting the court could decide arbitrability issues, we conclude the court did not err by finding the parties did not clearly and unmistakably delegate arbitrability issues to an arbitrator. But we agree with defendant's contention that the court erred by finding plaintiff's claims were not covered by the arbitration provision in the 2015 Provider Manual. For the additional reasons below, we reverse and remand for the court to determine in the first instance whether that arbitration provision is unconscionable.

*Standard of Review*

"'[W]hen considering a motion to compel arbitration, the court must initially "determine whether the parties agreed to arbitrate the dispute in question."

---

[1] After the parties' filed their briefs, plaintiff filed a request for judicial notice asking that we take judicial notice of defendant's motion to compel arbitration and supporting attorney declaration filed in another case in the United States District Court, Middle District of Alabama, case No. 2:19-cv-0061. We deny plaintiff's request because the documents were not before the court at the time of its decision and the documents are not relevant to this appeal.

[Citation.] "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."'" (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1283.) "'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citation.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.)

Defendant argues the standard of review is de novo while plaintiff contends we should review the court's order under the substantial evidence standard. According to plaintiff, the court made a "significant factual finding" by finding the case "does *not* involve the [Network Pharmacy Evaluation Committee] termination process argued by [defendant] to be applicable to this case." Plaintiff also claims the court determined which of defendant's provider manuals was controlling and further considered "the parties' conflicting evidence regarding the pharmacy manual's and agreement's provisions' meaning." But it does not appear the court considered any conflicting extrinsic evidence to reach these determinations, and the primary issue concerns the court's interpretation of the 2015 Provider Manual. We accordingly review the court's order under the de novo standard.

*The parties did not clearly and unmistakably agree to arbitrate issues of arbitrability.*

"Although the scope of an arbitration clause is generally a question for judicial determination, the parties may . . . elect to have the arbitrator, rather than the

9

court, decide which grievances are arbitrable." (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123.) "However, there is a presumption that they have *not* agreed to this. 'The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the "*question of arbitrability,*" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.""" (*Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1286.)

Here, both parties rely on the 2015 Provider Manual to address the question of arbitrability. The first paragraph of the alternative dispute resolution provision in the 2015 Provider Manual states: "Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below to resolve any and all issues and/or disputes between them (hereinafter referred to as a 'Dispute') *including, but not limited to all questions of arbitrarily* [*sic*], the existence, validity, scope, interpretation or termination of the Agreement or PM or any term thereof prior to the inception of any litigation or arbitration." (Italics added.) If the parties were not able to resolve the "Dispute" on their own, it would be submitted to binding arbitration before a panel of three arbitrators. Defendant argues this provision reflects the parties' agreement to have a panel of arbitrators decide the issue of arbitrability. Because the provision defines a "dispute" to include questions of arbitrability and later states that disputes are submitted to arbitration, defendant claims there is clear and unmistaken evidence of the parties' intent to delegate arbitrability issues to a panel of arbitrators. We disagree.

Because the 2015 Provider Manual contains a conflicting severability provision, the court correctly found it is ambiguous, thus not expressing a clear and unmistakable intent to delegate arbitrability questions to a panel of arbitrators. The severability provision states: "In the event that any portion of this section or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or

10

this Agreement. *In the event any court* determines this arbitration proceeding is not binding or otherwise *allows litigation involving a dispute to proceed*, the parties hereby waive any and all right to trial by jury in or with respect to such litigation, and *such litigation would instead proceed with the judge as the finder of fact*." (Italics added.) Use of the terms "court" and "dispute" create ambiguity and suggest a court could determine issues of arbitrability. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1566 [finding an arbitration provision did not clearly and unmistakably reserve the issue of unenforceability to an arbitration panel given a conflicting severability provision that referenced the court].) When an agreement is ambiguous, "'the court and not the arbitrator should decide arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide.'" (*Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1258.)

        *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425 (*Peleg*), which the court cited in its order, is instructive. In *Peleg*, the court found an arbitration agreement did not clearly and unmistakably delegate enforceability questions to an arbitrator where there was an inconsistency in the agreement's provisions. (*Id.* at pp. 1442-1445.) The delegation provision stated the arbitrator decided enforceability questions while the severability provision stated the court would decide the same issue. (*Id.* at pp. 1444-1445.) The court concluded the "statement in the severability provision that a *court* may decide the question of enforceability creates an ambiguity as to whether an arbitrator should decide if an arbitration contract is enforceable." (*Id.* at p. 1445.) While defendant claims *Peleg* is distinguishable because it involved a severability provision rather than a jury waiver provision, this distinction elevates form over substance.

        Relying on unpublished federal cases, defendant contends multiple courts have enforced delegation provisions like the one in the 2015 Provider Manual. But those cases are not binding on this court and did not involve conflicting provisions suggesting

11

the court could decide arbitrability questions. (*Apollo Md Bus. Servs. v. Amerigroup Corp.* (N.D.Ga. Nov. 27, 2017, Civ. A. No. 1:16-CV-4814-RWS) 2017 U.S.Dist. Lexis 230235; *MHA, LLC v. UnitedHealth Grp., Inc.* (D.N.J. Mar. 23, 2017, Civ. A. No. 15-7825 (ES) (JAD)) U.S.Dist. Lexis 42144.) Likewise, defendant's reliance on a published federal case enforcing a similar delegation provision in an earlier version of defendant's provider agreement is persuasive, but not binding, on this court. (*Paduano v. Express Scripts, Inc.* (E.D.N.Y. 2014) 55 F.Supp. 400.) The *Paduano* opinion also does not summarize the entirety of the defendant's provider agreement so it is not possible to discern whether it involved a conflicting severability provision. Finally, defendant claims another California trial court enforced the same delegation provision in the defendant's provider manual, but defendant does not provide an appropriate citation to the opinion or a copy of the opinion via a request for judicial notice, and, in any event, a trial court opinion has no precedential value.

Defendant further argues the severability provision, which defendant calls a jury waiver provision, is not incompatible with the delegation provision. According to defendant, the severability provision "references an 'arbitration proceeding' having occurred, and thus contemplates post-arbitration review of such proceeding . . . ." But the provision separately states the court may "allow[] litigation involving a dispute to proceed" and notes the "litigation would instead proceed with the judge as the finder of fact." This specific language—"litigation involving a dispute"—suggests the court could decide questions of arbitrability. This is consistent with defendant's main argument that the 2015 Provider Manual defines a "dispute" to include all questions of arbitrability.

Defendant also contends the severability provision (or jury waiver provision) simply "refers to the prospect that both parties consent to litigation . . . ." Defendant points to the second paragraph of the alternative dispute resolution provision, which states: "Either party may commence a Dispute Resolution in accordance with the rest of this section (or litigation if both parties waive arbitration) only if a representative

12

of the party seeking to commence such litigation or arbitration certifies in writing that [certain requirements are met]." But there is no obvious connection between this provision and the severability provision. More than 10 other paragraphs separate these two provisions from each other, and the severability provision makes no reference to the parties' waiver of arbitration. Instead, the severability provision broadly references "any court" allowing "litigation involving a dispute to proceed." A court presumably would not need to "allow" litigation when the parties already consented to the litigation.

Defendant next claims the parties clearly and unmistakably intended to delegate arbitrability issues to a panel of arbitrators because the 2015 Provider Manual indicates arbitration would be in accordance with the AAA's Commercial Dispute Procedures. Defendant relies on rule 7 of the AAA's Commercial Arbitration Rules and Mediation Procedures providing that the "'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" We agree some courts, including this court, have held the incorporation of AAA rules into an agreement may be sufficient indication of the parties' intent to delegate arbitrability questions to an arbitrator. (See, e.g., *Rodriguez v. American Technologies, Inc.*, *supra*, 136 Cal.App.4th at p. 1123 [concluding the parties intended to have an arbitrator determine arbitrability where their agreement incorporated the AAA's Construction Industry Rules, which included a rule allowing the arbitrator to determine his jurisdiction, including objections to the existence, scope, or validity of the arbitration agreement]; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 557 [concluding the parties intended the arbitrator to decide arbitrability because the agreement incorporated the AAA Commercial Arbitration Rules].) But the rationale of those cases does not apply in this context where the relevant agreement includes conflicting provisions that create ambiguity on the issue of arbitrability.

13

Finally, defendant argues the court erred by applying the "wholly groundless" exception to the threshold arbitrability question because the United States Supreme Court subsequently invalidated the doctrine. (*Henry Schein v. Archer and White Sales* (2019) ___U.S. ___ [139 S.Ct. 524].) Plaintiff concedes the wholly groundless doctrine is no longer available. But the court applied the wholly groundless doctrine as a separate alternative basis for denying defendant's motion to compel arbitration. Thus, we need not address it.

*Plaintiff's claims are arbitrable.*

Defendant argues in the alternative that if the parties did not delegate issues of arbitrability to a panel of arbitrators, the court nevertheless erred by concluding plaintiff's claims were not arbitrable. Given the broad definition of "Disputes" subject to arbitration under the 2015 Provider Manual and the strong policy requiring any doubts to be resolved in favor of arbitration, we agree the court erred.

A. Applicable Law and Standard of Review

We begin with the principle that there is a strong policy favoring arbitration. (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1051.) "[A]ny doubt as to the meaning and interpretation of an arbitration agreement is resolved in favor of requiring arbitration." (*Titolo v. Cano* (2007) 157 Cal.App.4th 310, 317.) "'[T]he burden is on "the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute."' [Citation.] In other words, 'an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (*Id.* at pp. 316-317.)

"In deciding whether the parties agreed to arbitrate their dispute, we apply state rules of contract interpretation to evaluate whether the parties objectively intended

14

to submit the issue to arbitration." (*Ramos v. Superior Court*, *supra*, 28 Cal.App.5th at p. 1051.) "'"[T]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citation]." [Citation.]' [Citation.] [Citation.] '[T]he terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested.'" (*Titolo v. Cano*, *supra*, 157 Cal.App.4th at p. 317.) "'When conflicting extrinsic evidence was not offered below, we apply a de novo, or independent, standard of review on appeal from a trial court's determination of whether an arbitration agreement applies to a particular controversy.'" (*Ramos*, at p. 1051.)

### B. The Applicable Agreement

Defendant argues that the court erred by applying the 2015 Provider Manual to all of plaintiff's claim. Defendant contends some of plaintiff's claims accrued prior to the 2015 Provider Manual so they are subject to the broader arbitration provision in the 2008 Provider Agreement. Plaintiff disagrees and argues the court was correct because its claims concern defendant's wrongdoing rather than defendant's predecessor-in-interest that existed before the 2015 Provider Manual. But since we conclude that *all* of plaintiff's claims are arbitrable under the terms of the 2015 Provider Manual, we need not address this argument.

### C. The Scope of the Relevant Arbitration Provision

Here, the relevant arbitration provision in the 2015 Provider Manual stated: "*Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below to resolve* any and all issues and/or disputes between them (hereinafter referred to as *a 'Dispute'*) *including, but not limited to* all questions of arbitrarily [*sic*], the existence, validity, scope,

15

interpretation or *termination of the Agreement* [2]*or* [*Provider Manual*] or any term thereof *prior to the inception of any litigation or arbitration.* [¶] In the event a Dispute arises, the party asserting the Dispute shall provide written notice to the other party identifying the nature and scope of the Dispute to the other party sufficient for a reasonable person to be apprised thereof. If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute . . . . [¶] *If the party asserting the Dispute has satisfied the requirements of this section thereof, it shall thereafter be submitted to binding arbitration* before a panel of three (3) arbitrators in accordance with the Commercial Dispute Procedures of the [AAA] . . . . [¶] . . . Unless otherwise agreed to in writing by the parties, *the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which notice of the Dispute was given* or shall be deemed to have waived its right to pursue the Dispute in any forum." (Italics added.)

For ease of reference, we refer to the above paragraphs in the arbitration provision as the first, second, third, and fourth paragraphs. In concluding plaintiff's wrongful termination and breach of contract claims were excluded from the scope of the arbitration provision, the court appears to have relied on the first paragraph. That paragraph carves out issues regarding immediate termination: "Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below . . . ." The court concluded plaintiff's claims "fall within the express exclusion." We conclude the court oversimplified its analysis.

As defendant notes, the arbitration provision broadly defines a "Dispute" as "any and all issues and/or disputes between [the parties] including, but not limited to all questions of arbitrarily [*sic*], the existence, validity, scope, interpretation or termination

---

2 "Agreement" is defined in such a way to include the 2008 Provider Agreement.

16

of the Agreement or [Provider Manual] or any term thereof . . . ."  Defendant argues the carve out language for immediate termination "modifies the party's obligation to 'work in good faith as set forth below'" but does not modify the definition of "Disputes" subject to arbitration.  In other words, "issues giving rise to immediate termination or non-renewal of the Agreements may not need to go through [the] informal dispute resolution meeting described in [p]aragraph 2" but would still be subject to arbitration pursuant to paragraph 3.

We agree with defendant's interpretation.  A close examination of paragraph 1 reveals that a "Dispute" explicitly includes termination issues, but paragraph 1 also states immediate termination or non-renewal issues are not subject to "the parties . . . work[ing] in good faith as set forth below . . . prior to the inception of any litigation or arbitration."  Paragraph 2 then describes the pre-dispute procedures the parties are required to follow, including written notice, a 30-day period following the written notice, and an opportunity to request a meeting or telephone conference.  The carve-out for immediate termination applies to these requirements in paragraph 2, but it does not appear the parties intended to exclude immediate termination issues from the requirement of arbitrating "Disputes," which is broadly defined as "any and all issues and/or disputes between" them.  (*Howard v. Goldbloom* (2018) 30 Cal.App.5th 659, 663 ["""A 'broad' clause includes those using language such as '*any claim* arising from or *related to* this agreement'" [citation] or "'arising in connection with' the agreement"""].)

Plaintiff argues immediate termination disputes are not subject to arbitration because the arbitration provision is contingent on the parties satisfying the pre-dispute requirements of paragraph 2, which a party could never satisfy with an immediate termination dispute.  Plaintiff focuses on the following language in paragraph 3:  "*If the party asserting the Dispute has satisfied the requirements of this section thereof*, it shall thereafter be submitted to binding arbitration . . . ."  (Italics added.)  According to plaintiff, this language "makes the obligation to arbitrate a dispute specifically contingent

17

on the [pre-dispute] requirements of [p]aragraph 2 . . . being satisfied." Because immediate termination claims "are excluded from [p]aragraph 2," plaintiff contends "necessarily the remainder of [p]aragraph 3 . . . including both the requirement to arbitrate and the application of the AAA rules . . . is inapplicable to issues giving rise to termination or non-renewal . . . ." Plaintiff further claims this is consistent with paragraph 4, which requires a party to initiate arbitration within one year after notice of the "Dispute" is provided.

While we agree with plaintiff that the above provisions are problematic, the language can be interpreted in a different way. Paragraph 3 generally states the "Dispute" can be submitted to arbitration if "the requirements of this section thereof" are satisfied. It does not state the pre-dispute provisions of paragraph 2 must be satisfied in all contexts in order to submit the dispute to arbitration, and immediate termination issues are specifically exempt from the paragraph 2 requirements. In any event, even if arbitration was contingent on satisfaction of the pre-dispute procedures in paragraph 2, the parties *did* engage in those procedures. In fact, plaintiff requested an in-person meeting pursuant to the dispute resolution provisions in the 2011 Pharmacy Network Agreement that mirror paragraph 2 of the 2015 Provider Manual. Although defendant responded the in-person meeting was not required because the issues involved immediate termination, which were excluded from the pre-dispute requirements, defendant never indicated that arbitration was foreclosed. Defendant also ultimately participated in a pre-dispute telephonic meeting pursuant to paragraph 2. All of this conduct, particularly plaintiff's initial request pursuant to paragraph 2, suggest the parties understood the dispute to fall within the scope of the arbitration clause.

In addition to the parties' conduct, other provisions in the 2015 Provider Manual suggest the parties intended to broadly arbitrate all disputes. For example, one provision states the arbitration agreement "shall survive any termination . . . ." As defendant notes, this is "something that would make little sense to specify if termination

18

disputes were excluded from arbitration altogether." Another provision states: "The parties expressly intend that *any dispute relating to the business relationship between them* be resolved on an individual basis . . . . The parties agree that any arbitration ruling by an arbitrator allowing class action arbitration or requiring consolidated arbitration involving any third party(ies) would be contrary to their intent and would require immediate judicial review of such ruling." (Italics added.)

Defendant claims the following provision further reflects the parties intent to arbitrate immediate terminations: "For purposes of clarity, *only the arbitration provisions in this section shall apply to any Network Pharmacy Provider terminations* or other determinations made as to a Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator network, *pursuant to the* [*Network Pharmacy Evaluation Committee*] *review process as stated in the* [*Provider Manual*]." (Italics added.) The 2015 Provider Manual defines "NPEC" as the Network Pharmacy Evaluation Committee, which would determine "the extent to which a breach has occurred," "participation status or the need for further review and recommendations," and "administrative action up to and including the termination of the Agreement." We agree with the court that the NPEC provision "does not assist defendant" because it "does not redefine what is included or excluded as a 'Dispute'" and "concerns only terminations or status determinations made pursuant to the NPEC review process," which is not at issue here. While defendant argues the NPEC review process was an alternative to the pre-dispute procedures under paragraph 2 and plaintiff simply chose not to proceed under the NPEC process, the parties have not described how plaintiff could take advantage of this process. We accordingly do not rely on this provision in reaching our decision.

Finally, we note defendant argues some of plaintiff's claims include non-termination claims that fall within the scope of the arbitration provision, including tort claims, claims under Florida statutes, and conduct occurring after plaintiff's termination from the pharmacy network. We agree that non-termination claims fit comfortably

19

within the definition of "Disputes," viz., "any and all issues and/or disputes between [the parties]" and are thus arbitrable.

For the foregoing reasons, we are unable to say "'""""with positive assurance that the arbitration clause is not susceptible of an interpretation that covers [this] dispute.""'""" (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 642.) Given the strong policy favoring arbitration and the principle that any doubts are construed in favor of arbitration, we conclude the court erred by holding plaintiff's claims were not within the scope of the arbitration provision.

*The court should determine unconscionability in the first instance.*

Plaintiff contends all of the arbitration provisions in the 2015 Provider Manual, 2011 Pharmacy Network Agreement, and 2008 Provider Agreement are unconscionable. Plaintiff also argues defendant waived any arguments on this issue by failing to challenge plaintiff's unconscionability arguments in its opening brief. But defendant's opening brief includes a footnote generally addressing plaintiff's unconscionability argument. Defendant accordingly did not waive any arguments on this issue. Regardless, "a trial court is required to first rule on the 'gateway' issues of whether an arbitration agreement is enforceable, including claims of unconscionability, before considering whether a particular dispute is within the scope of the arbitration clause." (*Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1530.) "When the trial court has not done so, it is appropriate to remand for an initial determination of enforceability." (*Ibid.*) Here, the court did not make any findings regarding unconscionability and denied defendant's motion to compel arbitration on other grounds. We accordingly remand the case to the court to determine in the first instance whether the arbitration provision in the 2015 Provider Manual is unconscionable.

20

DISPOSITION


The order is reversed as to the court's determination that plaintiff's claims do not fall within the scope of the arbitration provision in the 2015 Provider Manual. The matter is remanded with directions to determine whether the arbitration provision in the 2015 Provider Manual is unconscionable. In all other respects, the order is affirmed. In the interest of justice, each party shall bear its own costs incurred on appeal.



IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.